State of Florida *ex rel.* Fred L. Stringer v. J. M. Lee, as Comptroller of the State of Florida.

2 So. (2nd) 127

En Banc

Opinion Filed May 6, 1941

*D. M. Johnson* and *Whitaker Brothers,* for Relator;

*J. Tom Watson,* Attorney General, and *Nathan Cockrell,* Assistant Attorney General, for Respondent.

CHAPMAN, J.—This is a case of original jurisdiction. In the petition for an alternative writ of mandamus filed in this Court on the part of the Honorable Fred L. Stringer against J. M. Lee, as State Comptroller, it was made to appear that the relator was appointed and assumed the duties of Circuit Judge of the Twenty-fourth Judicial Circuit of Florida on May 11, 1927, and held the office of circuit judge continuously thereafter for a period of twelve years; that the relator, having held the office of Circuit Judge of the Twenty-fourth Judicial Circuit continuously for a period of twelve years and at the time of filing the said petition the relator having reached the age of sixty years and not having engaged in the practice of law since May 11, 1939, he was, as a matter of law, eligible to participate in and receive two-thirds of the compensation paid to circuit judges at the time of his said retirement on May 11, 1939, and should receive the amount thereof during the remainder of his natural life and be paid to him by the State Comptroller on his monthly requisition out of the Circuit Judges' Retirement Fund, as provided for by Chapter 19000, Acts of 1939, Laws of Florida.

The pertinent provisions of Chapter 19000, *supra,* for a decision of the case at bar are, viz.:

"Section 1. Whenever any circuit judge has elected to take the benefits of this Act in accordance with the terms hereof, and has served as such judge for twelve years or more or who is serving the twelfth continuous year as such judge, continuously or otherwise, and has attained the age of sixty years . . . such judge may voluntarily resign and retire from his office, and upon such retirement he shall be paid, during the remainder of his natural life, on his own monthly requisition, from the Circuit Judges Retirement Fund hereinafter established, two-thirds of the compensation being paid to such judges at the time of his resignation and retirement;— . . .

"Section 4. No judge drawing retirement compensation as provided in this Act shall engage in the practice of law.

"Section 6. Any circuit judge who may desire to take advantage of this Act shall, within ninety days after the passage and approval hereof, notify the State Comptroller and the State Treasurer to that effect, . . . Any person who may hereafter qualify as circuit judge shall be entitled to the benefits of this Act upon giving notice to the State Comptroller and the State Treasurer within ninety days after taking office, and after the giving of such notice, so long as such circuit judge shall hold office, two per centum shall be deducted from each installment of salary of such circuit judge, and said amount so deducted shall be deposited in to said Circuit Judges' Retirement Fund. The word salary as herein used shall be deemed to mean the total salary received by any circuit judge, including therein all amounts paid by any county of this State. . . .

"Section 7. There is hereby appropriated annually

and shall be paid into said Circuit Judges Retirement Fund out of any funds in the State Treasury not otherwise appropriated sufficient money to meet the requirements of this Act, taking into account the sums paid into said Circuit Judges Retirement Fund under Section 5 hereof."

The petition of the relator further alleged that on July 13, 1939, and within the ninety 90 days succeeding the passage of the Act as stated in Section 5 thereof, he did notify the respondent Lee, as State Comptroller, of his election to take the benefits of the Act and simultaneously directed or instructed the Comptroller to deduct from the money due him as compensation as circuit judge the two per centum and to deposit the same with and to the credit of and to become a part of the Circuit Judges Retirement Fund. That the State Treasurer likewise, on July 14, 1939, was legally advised of the election of the relator to accept the benefits of the Act.

From May 11, 1939, until July 20, 1939, the State Comptroller had in his custody and possession certain moneys due the relator by the State of Florida as salary as circuit judge and relator was of the opinion that the two per centum of his salary had been deducted by the Comptroller and deposited to the credit of the Circuit Judges Retirement Fund, but that since relator accepted a voucher for his salary on July 20, 1939, he has learned that the respondent failed or omitted to make the two per centum deduction. The relator alleged that there is now due him two-thirds of the compensation he was receiving monthly at the date of his retirement on May 11, 1939, to be paid in monthly payments by the State Comptroller out of the Circuit Judge Retirement Fund during the remainder

of his natural life. It is alleged further that the relator has a clear legal right to participate in the Circuit Judges Retirement fund and to receive compensation out of said fund, and that the law imposes upon the Comptroller the duty to issue vouchers drawn on said account in behalf of the relator from and after the date of his retirement on May 11, 1939, until the date of presenting his petition for an alternative writ of mandamus, and for that further period during the natural life of the relator. The respondent declined so to do.

The respondent moved this Court to quash the alternative writ previously issued, on the grounds, viz.: (1) the facts alleged in the alternative writ fail to state a cause of action; (2) the alternative writ fails to show a legal right to any part of the Retirement Fund provided for by Chapter 19000, Laws of Florida, Acts of 1939; (3) that alternative writ shows that the relator failed to comply with the provision of Chapter 19000, *supra;* (4) that the relator was not a circuit judge on July 13, 1939; (5) that the relator did not retire from the office of circuit judge within the meaning of Chapter 19000, *supra,* so as to lawfully participate in the Circuit Judges Retirement Fund.

The foregoing, in part, constitutes a brief resumé or summary of the pleadings in the case at bar.

It is well established that a motion to quash an alternative writ of mandamus, in many respects like a demurrer to a declaration, admits as true all matters of fact as are sufficiently pleaded, but challenges the sufficiency of the allegations to warrant relief. See State v. Jacksonville Terminal Co., 71 Fla. 295, 71 So. 474;. State *ex rel.* Women's Benefit Ass'n. v. Port of Palm Beach Dist., 121 Fla. 746, 164 So. 364; State *ex*

*rel.* Florida Natl' Bk. v. Board of Adm'n., 115 Fla. 753, 154 So. 876, 156 So. 15; State *ex rel.* Clark Printing Co. v. Lee, 117 Fla. 779, 158 So. 461; State *ex rel.* Sherrill v. Milam, 113 Fla. 491, 153 So. 100, 125, 136; State *ex rel.* Sovereign Camp W. O. W. v. Boring, 121 Fla. 781, 164 So. 859; State *ex rel.* Select Tenures, Inc., v. Raulerson, 129 Fla. 346, 176 So. 270.

This Court will take judicial notice of the public records of commissions appearing on file in the office of Secretary of State. See Livingston v. State, 140 Fla. 749, 192 So. 327; State *ex rel.* Gibbs v. Couch, 139 Fla. 353, 190 So. 723; Conyers v. State *ex rel.* Conroy, 98 Fla. 417, 123 So. 817. The records appearing in the office of Secretary of State disclose that the term of office of circuit judge so held by the Honorable Fred L. Stringer expired on May 11, 1939, and a commission to said office of circuit judge previously held by him issued to the Honorable Fred R. Hocker under date of May 12, 1939. The records of the Secretary of State fail to disclose a resignation of the office of circuit judge and an acceptance thereof filed prior to the date of the expiration of the said commission, which was May 11, 1939.

Chapter 19000, *supra,* became a law on April 21, 1939, at a time when the Honorable Fred L. Stringer held the office of circuit judge. Section 5 of the Act provides that *any* circuit judge holding a commission as such on April 21, 1939, who may desire to accept the benefits of the Act shall within ninety days after April 21, 1939, notify the State Comptroller and the State Treasurer of his intention or desire to accept all the benefits, advantages and privileges conferred by the terms thereof, and as long thereafter as such circuit judge shall hold office there shall be deducted

two per cent of his salary as circuit judge and the amount so deducted shall be deposited into a special fund created or established by the terms of the Act and identified in the office of the Comptroller and Treasurer as the "Circuit Judges Retirement Fund."

Section 5 thereof further provides that any person, after the effective date of the Act, receiving a commission as circuit judge shall have ninety days from the date of the issuance thereof in which to give notice to the State Comptroller of his intention and desire to accept the benefits, advantages and privileges of the Act and to authorize a deduction of two per cent of his annual salary, payable monthly, as circuit judge to be deposited to the credit of the Circuit Judges Retirement Fund, and shall continue to make payments to the said fund thereafter during the entire time that he holds the office of circuit judge.

Section 1 prescribes the existence of certain standards or controlling rules to be observed so as to entitle a circuit judge to the benefits of the Act, which are, viz.: (1) the judge must have served twelve continuous years, or more, or be serving his twelfth continuous year; (2) the judge must have attained sixty years of age, or more; (3) if the judge has served twenty years or more his said age is immaterial; (4) such judge or judges then may voluntarily resign and retire; (3) when such resignation is accepted and the judge retires from his office (6) then he shall be paid during the remainder of his natural life two-thirds of the compensation being paid the judge at the time of the acceptance of his resignation from the office of circuit judge; (7) the judge shall be paid by the State Comptroller and the

State Treasurer out of and from the Circuit Judges Retirement Fund.

The Act allows circuit judges holding commissions on April 21, 1939, a period of ninety days thereafter in which to elect to accept the benefits of the Act, and subsequently appointed judges are allowed or granted a period of ninety days from and after the date of the issuance of their respective commissions to elect to accept the benefits of the Act.

The Legislature in the enactment of Chapter 19000, *supra,* contemplated and intended, as expressed by the title and body of the Act, resignations and retirement from the office of circuit judge by employment of language, viz.: (a) the voluntary resignation and retirement; (b) establishment of Circuit Judges Retirement Fund; (c) providing for contributions by the circuit judges; (d) paid for retired circuit judges; (e) whenever any circuit judge elects to accept the benefits of the Act, such judge may voluntarily resign and retire; (f) the compensation shall be two-thirds the amount received by the judge at the time of his resignation and retirement; (g) any circuit judge may accept the benefits of the Act; (h) two per cent of his salary shall be deducted as long as said circuit judge shall hold office; (i) the judge drawing compensation under the Act shall not engage in the practice of law. Manifestly it was intended that a circuit judge must make the payments enumerated while holding the office of circuit judge and then tender his said resignation and when accepted by the Governor and filed with the Secretary of State, he could then retire from office and be eligible to receive the monthly payments designated in his own requisition monthly made. If the relator's resignation has

been accepted by the Governor and filed with the Secretary of State after April 21, 1939, the effective date of the Act, and prior to May 11, 1939, the date of the expiration of his commission then, if he had elected to take the benefit of the Act as provided in Section 1 and 5 thereof, he would be entitled to the benefits, advantages and privileges of and to participate in the distribution of the Circuit Judges Retirement Fund.

Honorable George Couper Gibbs, *amicus curiae,* appeared and orally argued the case at bar before this Court, and in his brief filed in the cause contends that Chapter 19000, Acts of 1939, Laws of Florida, gives to a circuit judge complying with the provisions thereof a vested right to the benefits thereof which cannot be affected by subsequent legislation. The Act contemplates a voluntary resignation by a person holding a commission as circuit judge and an acceptance thereof and a retirement from office after complying with all the provisions of the Act, so as to entitle the retiring judge to the benefits thereof. This Court has, from time to time, construed Acts providing for compensation for municipal employees under designated provisions, but the Act before us presents a new question in that compensation is provided for retiring State officials.

This Court, in the case of State *ex rel.* Holton v. City of Tampa, 119 Fla. 556, 159 So. 293, 98 A. L. R. 501, held that the right of an employee became vested by reason of his having fully performed all that was required to be done under the terms of his employment as a condition precedent to his having a pension allowed to him and a subsequent statute designed to deprive him of his pension rights, or to diminish the

amount thereof to an insignificant amount, would be plainly unconstitutional as a deprivation of his vested right.

In the case of Anders v. Nicholson, 111 Fla. 849, 150 So. 639, this Court had before it Chapter 8277, Special Acts of 1919, Laws of Florida, providing pensions for employees of the City of Jacksonville. Under the provisions of the Act Nicholson paid a designated sum into the pension fund from his salary and a provision was made for the withdrawal of his funds so paid, and Nicholson attempted to withdraw funds so paid into the pension fund, but payment thereof was refused because the petitioner was discharged. Chapter 11566, Acts of 1925, Laws of Florida, amended Section 8 of Chapter 8277, Acts of 1919, *supra,* to the effect that when a person was discharged he was only entitled to be paid out of said fund 50 per cent of the total amount, without interest, and it was contended that the subsequent Act was unconstitutional and void, as it attempted to interfere with the vested right of Nicholson. This Court sustained this contention and, in part, said (text 111 Fla. 862-3) :

"And so it is that by the acceptance of the terms and conditions of Chapter 8277, Acts of 1919, the relator entered into a contractual relation with the City of Jacksonville by which he was entitled to receive certain benefits and, in the event of being discharged while the provisions of that Act obtained, he was entitled to a refund of the amount paid into the fund, plus four per cent., and his rights accruing under the provisions of that Act could not be abrogated by any subsequent statute.

"When, however, the Legislature amended Chapter

8277, *supra,* by the provisions of Chapter 11566, Acts of 1925, and the petitioner continued to pay into the fund after that Act became effective he will be estopped from contending that he did not as to all payments made after the effective date of Chapter 11566, *supra,* accept the terms of the Act as thereby amended. Under the amendatory Act he was only entitled to receive, in case of discharge, 50% of the amount contributed by him after the effective date of that Act. But this Act could not affect his right to receive the full amount which he has paid under the original Act, plus four per cent. interest.' See Voorhees v. City of Miami, 145 Fla. 402, 199 So. 313.

In the case of Raines v. Board of Trustees, 365 Ill. 610, 7 N. E. (2d) 489, the Supreme Court of Illinois interpreted an Act of the Legislature of that State which created or established a State Teachers' Pension and Retirement Fund. The Retirement Fund was established by contributions on the part of Teachers and State appropriations. Any person engaged as a teacher in the public schools and having taught for a named number of years and have reached a certain age and had made contributions in a designated amount to the State Teachers' Pension and Retirement Fund was entitled to the benefits and privileges of the Act. Plaintiff was seventy-three years of age and had taught in the public schools of Illinois for over thirty years and retired at the age of sixty-four. Prior to his retirement he paid all the amounts into the teachers' fund provided for by the Act and has received an annuity of $400.00 prior to the amendment of the Act, which increased his contribution from $400.00 to $600.00. The plaintiff refused to pay the amount of the increase named in

the amendment, when the designated official declined to certify his name or to take any action that would entitle the plaintiff to the benefits, advantages and privileges of the retirement fund. It was held that the statute under which the plaintiff made payments and qualified to participate in the distribution of the Teachers' Retirement Fund created a contractual relation between the plaintiff and the State of Illinois and became a vested right which a subsequent Legislature could not constitutionally amend or change.

The law recognizes a difference between voluntary contributions to a fund under a statute and being compelled to suffer deductions from a salary. A circuit judge in the case at bar can elect to comply with the terms and provisions thereof, or he can decline to come within its provisions. He is free to exercise his discretion and elect or refuse to accept the privileges and options; and if he declines so to do he receives the full amount of his salary; if he elects to come within the provisions of the Act, he must direct the State Comptroller to deduct 2 per cent of his annual salary.

The case of Roddy v. Valentine, 268 N. Y. 228, 197 N. E. 260, in the Court of Appeals of New York, involved a Police Pension Fund. The Court, in discussing a vested interest therein, in part said:

"Where, however, the statutory conditions for retirement existing when the application is made have been met and the award of the pension or benefit has been made, or as of right should have been made (Matter of O'Brien v. New York State Teachers' Retirement Board, 215 App. Div. 220, 213 N. Y. S. 738, affirmed, 244 N. Y. 530, 155 N. E. 884), the interest becomes vested and takes on the attributes of a con-

tract, which, in the absence of statutory reservations, may not legally be diminished or otherwise adversely affected by subsequent legislation. Pennie v. Reis, 132 U. S. 464, 471, 10 S. Ct. 149, 151, 33 L. Ed. 426 N. Y. S. 735; Klench v. Board of Pension Fund Com'rs. of City of Stockton, 79 Cal. App. 171, 249 P. 46, and cases therein cited. . . ."

In the case of McBride v. Retirement Board of Allegheny County, 330 Pa. 402, 199 Atl. 130, the Court construed an Act creating a County Employees' Retirement Act. The employee made monthly contributions from his salary, which were augmented by public contributions, and the employee, after serving twenty years and attaining the age of fifty and had made the contributions to the fund, was eligible to participate in the distribution thereof. The Court, in discussing McBride's vested interest in the retirement fund, in part, said:

". . . An employee fulfilling these conditions then has a vested interest in retirement pay which cannot be destroyed, weakened, or departed from by subsequent legislation. Neither dismissal from service or office, nor any involuntary removal, can affect this vested right to retirement pay. We endeavored to specifically hold in the McGovern case that eligibility for retirement pay is complete as soon as an employee or member of the retirement system has satisfied the conditions requisite for retirement, whether the employee chooses to retire immediately or to continue in active service. His rights to such pay are fixed as of the time he attained eligibility. Until retirement pay is earned as above described the right is inchoate. During this period retirement pay is being built up. The inchoate right becomes a complete vested right

when the conditions connected with the particular retirement system are complied with. This right cannot be thereafter disturbed by legislation. We reiterated this thought in the Teachers' Tenure Act Cases, Malone v. Hayden, 329 Pa. 213, 197 A. 344, at page 353, note, opinion filed January 31, 1938. . . .

"Retirement pay is a part of the compensation for services rendered during active employment. Plaintiff's rights under the retirement Act, having vested upon his becoming eligible for retirement, could not be impaired by legislation. Upon subsequently accepting a position with a different branch of the State government his rights to retirement pay were not waived. Accepting employment by the State is not a waiver of retirement rights. If the State may constitutionally provide that an individual's rights are to be extinguished as here, conceivably the State may so increase the number of contingencies upon which the employees' interest shall cease, as to actually force a surrender of all rights."

The weight of authorities is to the effect that when a government by statute once establishes a compensation or retirement system for its said officers or employees and provides in part the funds and means for administering it according to the terms thereof, and any such officer or employee contributes money over a period of years and the contributions are placed to the credit thereof and the officer or employee has served the public or government for the designated period of years, or while serving attains a certain age or becomes mentally or physically disabled while so serving, and when the conditions arise or occur upon which by the rules and regulations of the system the said officers or employees become eligible for retire-

ment and to receive funds to be paid out of said compensation retirement fund and the said officers or employees having met all the requirements of the Act creating the retirement system, then the said officers or employees have acquired a vested right under the terms of said statute which establishes a contractual relation which may not be affected or adversely altered by subsequent enactments. This rule in a general way is supported by the previous decisions of this Court in Anders v. Nicholson, *supra,* and State *ex rel.* Holton v. City of Tampa, *supra.* See Klench v. Board of Pension Com'rs. of the City of Stockton, 79 Cal. App. 171, 249 Pac. 46; Dryden v. Board of Pension Com'rs., 6 Cal. (2d) 575, 59 Pac. (2d) 104; Trotzier v. McElroy, 182 Ga. 719, 186 S. E. 817; Stevens v. Minneapolis Fire Department Relief Ass'n., 124 Minn. 381, 145 N. W. 35; West v. Anderson, 187 Ga. 587, 1 S. E. (2nd) 671; Ball v. Board of Trustees of Teachers' Retirement Fund, 71 N. J. L. 64, 58 Atl. 111; Roddy v. Valentine, 268 N. E. 228, 197 N. E. 260; 11 Am. Jur., p. 1179, par. 370.

The petition for an alternative writ of mandamus is fatally defective because it does not contain an allegation to the effect that the relator, *between* the effective date of the Act on April 21, 1939, and May 11, 1939, the date of the expiration of the relator's commission as circuit judge, and during the time wherein he held the office of circuit judge, that he notified the State Comptroller and Treasurer of his election to accept the benefits of the Act and did pay to the State Comptroller to be placed to the credit of the Circuit Judges' retirement Fund the amount due under the terms of the Act, and between the aforesaid dates that the relator tendered his said resignation as circuit judge

and after an acceptance thereof retired from said office. A successor to Judge Stringer as circuit judge was commissioned May 12, 1939, which terminated Judge Stringer's right to continue the office under Section 14 of Article XVI of the Constitution of Florida.

The motion to quash is hereby sustained, and leave to file an amended petition within fifteen days so as to overcome the defects above pointed out is hereby granted, and on failure to file the amended petition within the fifteen-day period the said cause shall be dismissed.

It is so ordered.

BROWN, C. J., WHITFIELD, BUFORD, and THOMAS, J. J., concur.

TERRELL and ADAMS, J. J., not participating.