142 So.2d 349 (1962)
STATE of Florida, On the Relation of Fay O'DONALD, Appellant,
v.
CITY OF JACKSONVILLE BEACH, a Municipal Corporation, et al., Appellees.
No. D-267.
District Court of Appeal of Florida. First District.
June 12, 1962.
Rehearing Denied July 5, 1962.
*350 Harry B. Fozzard, Jacksonville, for appellant.
Stephen Stratford, Jacksonville, for appellees
WIGGINTON, Judge.
This appeal is from a final judgment entered in a mandamus action instituted by appellant for the purpose of securing the benefits to which she claims to be entitled as the widow of a deceased employee of appellee. The judgment appealed quashed the alternative writ theretofore issued and dismissed the petition. There is no dispute as to the controlling facts in the case, the question involved being only one of law.
Appellant is the widow of Fleming O'Donald, who was an employee of the City of Jacksonville Beach when Chapter 19914, Laws of Florida, Sp.Acts of 1939, was enacted. This Act created an employee's pension plan for the City of Jacksonville Beach, mandatorily required all employees to become members of the plan established thereby, and to contribute a percentage of their salaries to the fund from which benefits would be paid. This Act was amended by Chapter 23371, Sp.Acts of 1945. Fleming O'Donald continued in the employment of appellee until his retirement for disability on September 1, 1950. Under the pension act as amended, O'Donald was entitled to receive a monthly pension for the remainder of his life in the sum of $137.36. At that time the Act further provided that upon his death there would be paid to his widow a monthly pension in a sum equivalent to 75% of the amount to which O'Donald had received during his retirement. In pursuance of its obligations under the terms and provisions of the pension act appellee paid to O'Donald the amount provided by the law then in effect. Subsequent to O'Donald's retirement, and prior to his death, the Legislature amended the pre-existing pension law by enactment of Chapter 27643, Sp.Laws of 1951. The purpose of the 1951 Act was to create a comprehensive retirement system for the employees and officers of the City of Jacksonville Beach. The assets belonging to the old pension fund were transferred to the new system, and it was provided that pensions and other benefits which were allowed and payable under the old pension act would become obligations of the new system and payable from the pension reserve fund created thereby within certain limitations provided in the Act. The new law specifically provided that pensions allowed and payable to retired employees of the City prior to the effective date of the new act should be continued without adjustment throughout the lifetime of such employee. The Act further provided, however, that no contingent benefits shall accrue to the widow or children of such retired *351 employee upon the latter's death unless such retired employee elected in writing to accept a reduced retirement benefit during the remainder of his life, and a reduced benefit to his widow and dependents in the event of his death.
O'Donald made no election in writing as provided in the new retirement act of 1951, but continued to receive and accept from the City the same monthly pension benefits previously paid to him as provided by the law which was in effect at the time of his retirement. O'Donald died on December 19, 1960, and his widow, the appellant herein, made demand upon the City to pay her the pension benefits provided under the law which was in effect at the time of her deceased husband's retirement. This demand was refused on the sole ground that her rights, if any, to retirement benefits were those provided in the new retirement act adopted in 1951, and since her deceased husband failed to comply with the terms thereof by electing in writing to accept a reduced retirement benefit during the remainder of his life, and a reduced benefit to his widow after his death, the widow's contingent benefits provided under the original pension law were terminated and she is now entitled to nothing.
It is appellant's contention that the pension benefits provided for a widow under the law which was in effect at the time of her husband's retirement constituted a vested right of contract which could not be impaired by the subsequently enacted retirement law adopted in 1951. It is appellee's position that the widow acquired no vested rights of contract under the original pension law; that such law was validly amended in 1951 by enactment of the statute creating a new retirement system, and that the terms and provisions of the new law were binding on appellant and her deceased husband. Appellee takes the secondary position that even though a contingent beneficiary, such as appellant in this case, might be entitled to pension or retirement benefits under statutes such as those now considered, such rights do not come into being or become vested until the death of her husband, and that her right to benefits must then be determined in accordance with the law in effect at that time. Appellee reasons that since the new retirement act of 1951 was in effect at the time of O'Donald's death, appellant's rights, if any, must be determined in accordance with the provisions of that law and not the law as it existed prior to that time.
For the purpose of this opinion we point out that the question here presented arises under employees' pension or retirement plans created by acts of the legislature. The rules of law pronounced herein apply only to pension or retirement plans so created, and shall not necessarily be interpreted as applicable to pension or retirement plans adopted and placed into effect by business or industry.
The controlling question presented for our decision is whether under the facts of this case appellant widow acquired a vested right of contract to pension benefits provided by the law in effect at the time of her husband's retirement, and if so, whether the amendatory act of 1951 impairs the obligations of that contract.
The Constitutions of both the United States and the State of Florida provide that no state shall pass any law impairing the obligation of contracts.[1]
In the early case of Anders v. Nicholson our Supreme Court held: "`It is also settled that constitutional provisions against impairing the obligations of a contract do not apply to obligations imposed by the law without the assent of the party bound, even though by a legal fiction they may be enforced in an action in form ex contractu. In other words, the classes of contracts *352 protected are voluntary  that is, based on the assent of the parties, expressly or impliedly given. That class of obligations, aptly styled `quasi contracts,' is not embraced within the constitutional guaranty against the passage of a law violating the obligation of a contract.'" A quasi contract was defined by the court to be "`A class of obligations which are imposed or created by law without regard to the assent of the party bound on the ground that they are dictated by reason and justice, and which are allowed to be enforced by an action ex contractu. They rest solely on the legal fiction and are not contract obligations at all in the true sense, for there is no agreement.'"[2]
Whether a given pension or retirement plan created by an act of the legislature confers upon employees participating therein a vested right of contract depends upon whether participation is voluntary upon the election of the employee, or whether participation is mandatorily required of all persons included within the plan regardless of their desire to become members thereof.
Under the decisional law of this state, it has been established that benefits provided by a pension or retirement plan created by an act of the legislature in which all employees to be benefitted thereby are mandatorily required to participate therein may be subsequently modified by amendatory legislation which would be binding on all employees who are in the active service of the employer at the time such amendment is adopted, provided the amendment does not reduce the benefits to such an unreasonable extent as to justify the inference that deprivation and not reasonable regulation was the legislative object in view. In the Holton case[3] an employee of the City of Tampa retired under a pension law which mandatorily required all employees to become members of the plan and contribute a percentage of their salary to the fund from which pensions were paid. After Holton's retirement the original law was amended in such manner as to materially reduce the pension payments theretofore received by him as a retired employee. Under the peculiar wording of the pension act the employee, upon retirement, was not an ex-member of the Tampa Fire Department but was considered a retired fireman still retained in the service as a member of the Fire Department. It was upon the theory that even though retired, the employee was still in the active service of the City that our Supreme Court held the employee did not possess a vested right of contract to be paid the amount of pension specified in the original law, but like all other active members of the Fire Department then in the service of the City, he was bound by the amendatory act which reduced pension benefits to a sum less than he was originally paid.
To like effect is the decision of the Supreme Court in the Voorhees case[4] which involved the question of whether a mandatory pension plan created by an act of the legislature, and applicable to certain designated employees of the City of Miami, conferred a vested right of contract in the employees covered by the plan which could not be impaired by subsequent legislation. Implicit in the court's decision is the holding that since the pension plan in question was mandatory in character, it conferred no vested rights of contract in the employees covered thereby. In its decision the court quoted from its prior decision in the Holton case by saying: "`It is undoubtedly true that the establishment of a pension system for municipal officers and employees whereby after serving a certain number of years, or upon disability from injuries received in the course of their duties, they are to be retired *353 from active service and paid a certain proportion of their salaries for the remainder of their lives, is a valid disposition of public funds when duly authorized by statute, and that the rights of a person in such a pension fund, even though he contributes to its maintenance, are not such as will prevent the Legislature from repealing or amending the statute, merely because the officer or employee has contributed to the fund so long as the fund existed and the law stood unrepealed.'" The Voorhees case was instituted by active employees of the City entitled to benefits under the original act, and it was held that a subsequent amendatory act repealing the original pension plan and substituting a new one in its place was valid and binding on all employees of the city even though they were participants in the pension plan created by the prior act.
We pause to note that both in the Holton and Voorhees cases above discussed the pension plans there under consideration were compulsory in character. In each case the question presented was whether employees, who in fact or in law were held to be active employees not yet fully retired, had a vested right of contract under the pension plans in which they were participating. In each case it was held that they did not, and that their rights under the acts involved in each case could be altered or modified by subsequent legislation.
Contrary to the rule above stated, it is equally established by decisional law of this state that benefits provided for employees under a voluntary pension or retirement plan created by an act of the legislature may not be modified or reduced by subsequent amendatory legislation for the reason that those electing to participate in such voluntary plans acquire vested rights of contract to the benefits provided therein upon acceptance of the plan, which rights may not be impaired by subsequent amendments to the act.
In the Anders case mentioned above an employee of Duval County elected to participate in a voluntary pension plan created by a 1919 act of the legislature. The Act provided that upon discharge of any member of the plan he shall be refunded all payments made by him to the fund, together with interest thereon. The pension act in which the employee was participating was amended in 1925, which amendment provided that a discharged employee was entitled to a refund of only 50% of the amount contributed by him to the pension fund, without interest. Upon the employee's discharge the City offered to refund 50% of the amount he had contributed to the pension fund during the entire period of his employment under the reduced formula provided in the amendatory act of 1925. The employee brought mandamus to compel a refund to him of the amount of his contributions in accordance with the provisions of the original Act of 1919. The Supreme Court held that since the original pension act was voluntary in character, the employee acquired a vested right of contract in the benefit afforded thereunder, which contract could not be impaired by the subsequently enacted amendatory plan adopted in 1925. It was held that the employee was entitled to a reimbursement of the total amount of contributions paid by him into the pension fund, together with interest thereon, for the period of his employment up to the date on which the amended act became effective. It was further held that as to all contributions made subsequent to the enactment of the amendatory act, such contributions should be refunded in accordance with the formula set forth in the amendment.[5] This rule of law was reaffirmed by the Supreme Court in the Stringer case,[6] which quoted with approval from a decision rendered by the Supreme Court of Illinois in the Raines case which held: "Under statutes creating teachers' retirement funds by which it is optional with the teachers to come under their provisions by having a certain sum deducted from their *354 salaries, it is held that the election to participate in the fund raises a contractual relation, the terms of which are ascertained by reference to the statute."[7]
As was so aptly held by the Supreme Court of Pennsylvania in the Hickey case: "`The Legislature may from time to time, within the confines of that established relation, alter, change, amend, and render intact the actuarial soundness of the system so as to strengthen its fibers in any way it sees fit.' [Retirement Board of Allegheny County v. McGovern] 316 Pa. [161] at page 176, 174 A. [400] at page 407. The Legislature may strengthen the actuarial fibers but it cannot break the bonds of contractual obligations. The permissible changes, amendments and alterations provided for by the Legislature can apply only to conditions in the future, and never to the past. According to the cardinal principle of justice and fair dealings between government and man, as well as between man and man, the parties shall know prior to entering into a business relationship the conditions which shall govern that relationship. Ex post facto legislation is abhorred in criminal law because it stigmatizes with criminality an act entirely innocent when committed. The impairment of contractual obligations by the Legislature is equally abhorrent because such impairment changes the blueprint of a bridge construction when the spans are half way across the stream."[8]
The force and validity of the above stated rule was not weakened in any respect by the decision of the Supreme Court rendered in McNulty. In this case a retired fireman participating in a voluntary pension plan received the benefits to which he was entitled under a 1927 pension act. In 1941 an amendment to the act was adopted, the provisions of which granted to retired employees a smaller pension but greater benefits than those conferred by the original act under which McNulty retired. McNulty voluntarily accepted the reduced pension payments provided in the amended act for a period of more than six years during which time he also enjoyed the additional benefits provided thereunder. Thereafter he instituted suit claiming entitlement to the difference between the monthly compensation he had been paid under the amendatory act, and the amount to which he was entitled under the original act. The Supreme Court held that by having accepted the benefits conferred by the amendment of 1941 for a period of more than six years, McNulty was estopped to question the validity of that act or to assert vested rights of contract in the monthly pension granted him under the original act. The inference of this decision is that had not the question of estoppel been present in the case, the amendatory act could not have had the effect of impairing McNulty's vested right of contract to the benefits granted him under the original act which was in effect at the time of his retirement.[9]
From the foregoing authorities it would appear that since the pension act of the City of Jacksonville Beach involved in this case was mandatory in character, appellant's deceased husband acquired no vested rights of contract in the benefits conferred thereby prior to the date of his retirement for disability.
As an active employee of the City of Jacksonville Beach, appellant's husband retired under the terms and provisions of the pension act which was in effect at that time. Whether or not he had theretofore acquired a vested right of contract in the benefits accorded by the pension plan is immaterial. The law is too well settled to admit of any doubt that when a participating member of a pension or retirement plan reaches retirement *355 status and elects to retire in accordance with the terms and provisions of the act creating the plan, he acquires at that time a vested right of contract in all benefits conferred upon him under the terms and provisions of the act then in effect. This question was placed at rest by our Supreme Court in the Stringer case above mentioned in which it is said: "The weight of authorities is to the effect that when a government by statute once establishes a compensation or retirement system for its said officers or employees and provides in part the funds and means for administering it according to the terms thereof, and any such officer or employee contributes money over a period of years and the contributions are placed to the credit thereof and the officer or employee has served the public or government for the designated period of years, or while serving attains a certain age or becomes mentally or physically disabled while so serving, and when the conditions arise or occur upon which by the rules and regulations of the system the said officers or employees become eligible for retirement and to receive funds to be paid out of said compensation retirement fund and the said officers or employees having met all the requirements of the act creating the retirement system, then the said officers or employees have acquired a vested right under the terms of said statute which establishes a contractual relation which may not be affected or adversely altered by subsequent enactments."[10]
To the same effect is the Advisory Opinion rendered by the Supreme Court to the Governor of Florida on a question involving the rights of two retired justices of the Supreme Court to be paid the retirement compensation provided by the retirement laws in effect at the time of their respective retirements. In answering the Governor's inquiry the Supreme Court said: "The reason for our opinion is that upon retiring, after faithfully serving for more than twenty years, each of these justices surrendered the unexpired portion of a term to which he was then entitled and in absolute good faith accepted the commitments made to him by the State through the legislative enactments described in your request. Such commitment by the State, coupled with the acceptance of the retiring justice thereupon created a contractual obligation between the State and the justice that could not be impinged upon by subsequent legislation. The rights of each retired justice to the pension in accordance with the formula fixed by law at the time of his retirement became vested in harmony with the reasons stated in our opinion in State ex rel. Stringer v. Lee, 147 Fla. 37, 2 So.2d 127."[11] On the basis of the foregoing it was held that a legislative act adopted subsequent to the retirement of these justices purporting to reduce the amount of retirement pay to which they were previously entitled was void and of no effect.
The fact that appellant's deceased husband had a vested right of contract in the benefits granted him under the pension act in effect at the time of his retirement is not dispositive of the question which must be resolved on this appeal. Conceding the law to be as stated above with respect to the rights of the retired employee, the crucial question for our determination is whether the pension benefits provided for appellant widow under the act in effect at the time her deceased husband retired from active service may be modified, withdrawn or in any other manner impaired by the retirement act of 1951. This latter act purported to withdraw all benefits theretofore granted to widows of retired employees unless the latter elected within a specified time to accept a reduced pension payment, and a reduced benefit to his widow in the event of his death.
Our research fails to disclose any decision by an appellate court of this state passing directly upon the precise point presented for our decision, and counsel for the parties *356 have been unable to refer us to any. The question was raised in the Warren case.[12] In that decision, even though the Supreme Court discussed the question, it did not squarely pass upon it but decided the appeal on other grounds. That opinion is of little assistance to us in reaching our decision.
Courts from other jurisdictions differ both as to the rule of law which should be followed in deciding this question, and in the underlying philosophies which prompted them to adopt the rules which they have followed. The decisions touching on this point are legion.[13]
The numerical weight of authority represented by decisions of other jurisdictions appears to hold that the rights of a widow of a retired employee to pension or retirement benefits after the death of her husband must be determined upon the facts and in accordance with the law in effect at the time of her husband's death. These decisions proceed upon the premise that the benefit provided a widow of a retired employee by a pension or retirement law is not a continuation of the pension formerly paid to her husband, but is an entirely separate benefit and does not vest in the widow until the death of her husband. These decisions hold that the right of the widow is not a vested or accrued right prior to her husband's death, but is a contingent right which comes into being only in the event her husband predeceases her and the marriage relation exists between them at the time of her husband's death.[14]
A contrary rule of law has been adopted by courts of other jurisdictions. These decisions hold that both the rights of the employee and those of his widow become vested in accordance with the provisions of the act which is in effect at the time the employee elects to retire and accept the benefits provided thereby. It is accordingly held that the rights of a widow so fixed by law may not be impaired by subsequent legislation enacted during the life of the retired employee, and before benefits become payable to the widow under the law in effect at the time of retirement.[15] In a factual situation identical with the case we now review, the Supreme Court of Georgia stated that the right of the widow is not merely contingent but is more analogous to a vested remainder or saleable interest, subject to be divested and to go to other beneficiaries upon her dying or remarrying before receiving payments.[16]
In formulating the rule of law to be applied in this case, it is necessary that we consider the present day concept of pension or retirement plans adopted for the benefit of employees, and the part such plans are intended to play in the social and economic life of our citizens. The historical development of pension or retirement plans was well stated by the Supreme Court of Pennsylvania in the Hickey case above referred to. In that case the court said: "Much of the misapprehension which apparently still exists in the minds of conscientious administrators of pension funds is possibly due to the fact that there still lingers a remnant of the ancient idea that a pension is a manifestation of sovereign generosity. The concept of pensions has come down through the centuries wearing a cloak of monarchical dispensation. Kings conferred pensions on court favorites, artists and military heroes with a flourish which proclaimed that the royal treasury was as inexhaustible as the crown's power was unlimited. However, despite ceremony and pronunciamento, the pensioner obtained no vested right to the proclaimed pension. In fact, *357 he could not be any more assured of a continuation of the pension than he could be assured that his head would remain on his shoulders if the should displease his absolutist benefactor. But the pension of today is not a grant of the Republic nor in this case is it a gift of the City Fathers. It is the product of mutual promises between the pensioning authority and the pensioner; it is the result of contributions into a fund which exists for the single purpose of pensions."[17]
In Greene v. Gray our Supreme Court said that pension and retirement acts for public employees are generally upheld on the theory that the delayed payments are a part of the participant's compensation for services already performed; that they contribute to efficiency in government; that they offer an added inducement to those with special skills and techniques to remain in government employment. They tend to raise the standard of government personnel and make government service a career rather than a passing interlude.[18]
Courts cannot close their eyes to the importance that so-called fringe benefits, which include pension or retirement plans, play in the formulation and maintenance of the employer-employee relationship. The availability of a fair and equitable retirement plan is just as important an inducement for one to accept employment or continue in the service of his employer as is the amount of salary he will receive during the active period of employment. The desire for security in the event of disability or during the declining years of life is of paramount concern to every conscientious bread-winner. The security he seeks is not only for himself, but for those who may be dependent upon him when he is no longer able to engage in active work and in the event of his death. In order to meet this social and economic need most pension or retirement plans provide for payment of benefits to the employee after retirement, and for reduced benefits to the employee's dependents after his death. To the responsible employee, the amount of retirement pay he will receive is of no greater importance to his happiness and peace of mind than is the assurance that after his death his dependents will be cared for to the extent of the benefits provided by the plan in which he is a participant. It is our belief that a pension or retirement plan which provides benefits to the employee after retirement, and to his dependents after his death, would constitute nothing short of a cruel hoax amounting to a travesty on justice if after an employee fulfills all requirements of the plan and retires, subsequently enacted legislation could so amend the plan as to materially reduce or withdraw the only source to which the employee's dependents could look for support in the event of his death.
It is our opinion, and we so hold, that the minority rule of law followed by the courts of Ohio and Georgia in the decisions cited above is the sounder and best reasoned rule and should be applied in this case. When an employee retires under a plan which affords benefits to him during the remainder of his life and to his dependents upon his death, he acquires a vested contract right in all of the benefits afforded by the law then in effect. The contract thus created is one for his own benefit so long as he shall live, and is a third party beneficiary contract insofar as concerns his dependents. It has long been the law of this state that where the nature or terms of a contract reveal the intention of the formal parties thereto that its provisions be not merely for their own benefit but also for the benefit of a third party, the benefit to that party being one of the direct and primary objects of the contract, such third party's rights under the contract will be preserved and enforced.[19] An employee's right to demand *358 performance of all provisions of this contract becomes vested in accordance with the law in effect at the time of his retirement, and may not be impaired by subsequent legislation purporting to modify or withdraw any of the benefits conferred thereunder. His participation in the retirement plan over the requisite period of time, and his contribution to the fund from which benefits are paid, is a sufficient consideration to support all the terms and provisions of the contract.
This court judicially knows that sound pension and retirement plans are designed in accordance with proven actuarial principles. For a plan which provides benefits for both the employee and his dependents to maintain a condition of solvency, the amount of compensation payable to a retiree must necessarily be less than it otherwise would be if no provision for benefits to dependents were included therein.[20] It would be palpably unfair for a law to require acceptance of reduced compensation by an employee after retirement because of the obligation for payment of benefits to dependents after his death, and then permit the law to be amended in such manner as to reduce or withdraw the benefits for dependents which the plan assumed at the time of the employee's retirement.
So it is that in the original pension plan applicable to employees of the City of Jacksonville Beach a valuable consideration moved from appellant's deceased husband by virtue of his participating in the plan and the contributions he made to the pension fund. When he retired he acquired a vested contract right in all the benefits conferred by the plan. These benefits consisted not only of a monetary sum payable to him during the remainder of his lifetime, but also a reduced sum to be paid his wife upon his death. The appellant herein, although not a party to the contract, acquired rights as a third party beneficiary thereof which could not be lawfully impaired by the enactment in 1951 of the revised pension and retirement plan for the employees of the City of Jacksonville Beach. It is our conclusion, and we so hold, that appellant in this case is entitled to receive the benefits payable to widows of deceased employees under the original pension plan which was in effect at the time her deceased husband retired from active service as an employee of appellee.
The judgment appealed is accordingly reversed and the cause is remanded for further proceedings consistent with the views expressed herein.
Reversed and remanded.
CARROLL, DONALD K., C.J., and RAWLS, J., concur.
NOTES
[1] "No State shall * * * pass any * * Law impairing the Obligation of Contracts, * * *" Section 10, Art. I, Constitution of the United States. "No * * law impairing the obligation of contracts, shall ever be passed." Section 17, Declaration of Rights, Constitution of the State of Florida, F.S.A.
[2] Anders et al. v. Nicholson, 111 Fla. 849, 150 So. 639.
[3] State ex rel. Holton v. City of Tampa et al., 119 Fla. 556, 159 So. 292, 98 A.L.R. 501.
[4] Voorhees v. City of Miami et al., 145 Fla. 402, 199 So. 313.
[5] Anders v. Nicholson, see footnote 2.
[6] State ex rel. Stringer v. Lee, 147 Fla. 37, 2 So.2d 127.
[7] Raines v. Board of Trustees, etc., 365 Ill. 610, 7 N.E.2d 489.
[8] Hickey v. Pittsburgh Pension Board, 378 Pa. 300, 106 A.2d 233, 52 A.L.R. 2d 430.
[9] McNulty v. Blackburn et al., (Fla. 1949) 42 So.2d 445.
[10] State ex rel. Stringer v. Lee, see footnote 6.
[11] Advisory Opinion To The Governor, (Fla. 1955) 82 So.2d 494.
[12] State ex rel. Warren v. City of Miami, 153 Fla. 644, 15 So.2d 449.
[13] 52 A.L.R.2d 437  see authorities cited.
[14] Arnold v. Browning, 294 Ky. 164, 171 S.W.2d 239; In re Ross, 201 Okla. 476, 207 P.2d 254; Packer v. Board of Retirement, 35 Cal.2d 212, 217 P.2d 660.
[15] State ex rel. Gossairt v. Lakewood Police Relief & Pension Fund, (Ohio App. 1954) 120 N.E.2d 741.
[16] West et al. v. Anderson, (1939), 187 Ga. 587, 1 S.E.2d 671.
[17] Hickey v. Pittsburgh Pension Board, see note 8.
[18] Greene et al. v. Gray et al., (Fla. 1956) 87 So.2d 504.
[19] Di Camillo et al. v. Westinghouse Electric Corporation, (Fla.App. 1960) 122 So.2d 499.
[20] For illustration see F.S. § 123.07, F.S.A.