**FLORIDA STATE LODGE, FRATERNAL ORDER OF POLICE, on Behalf of HIALEAH LODGE 12, Plaintiff-Appellant,**

v.

**CITY OF HIALEAH, FLORIDA, a municipal corporation, Defendant-Appellee.**

No. 86–5613.

United States Court of Appeals, Eleventh Circuit.

April 24, 1987.

Robert D. Klausner, Pelzner, Schwedock, Finkelstein, & Klausner, P.A., Hollywood, Fla., for plaintiff-appellant.

Joseph H. Serota, Fine, Jacobson, Schwartz, Nash, Block & England, Miami, Fla., for defendant-appellee.

Before RONEY, Chief Judge, HATCHETT, Circuit Judge, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

In this case we affirm the district court's determination that section 447.403 is constitutional and that the city of Hialeah, Florida's reduction of sick leave and vacation benefits did not constitute a substantive due process violation or unconstitutionally impair the obligation of contract.

## FACTS

In 1984, appellant, Florida State Lodge, Fraternal Order of Police (FOP), engaged in collective bargaining negotiations with the City of Hialeah, Florida (City), pursuant to the provisions of Chapter 447, Part II, Florida Statutes. After lengthy negotiations, the parties reached an "impasse" as defined in Florida Statutes, section 447.403, and proceeded through the process set forth in that statutory provision for the resolution of an impasse.

Following a hearing before a Special Master, as required by section 447.403, both the FOP and the City rejected certain

findings made by the Special Master, thereby bringing the matter for final resolution to the Hialeah City Council.

There were six issues upon which the parties were deadlocked: (1) wages, (2) night shift differential, (3) assignment pay, (4) the pay plan, (5) sick leave accrual, and (6) vacation accrual. Two of these issues, vacation accrual and sick leave accrual, involved retrospective interests. In resolving these six issues, the City Council mandated a result in the vacation and sick leave areas which the FOP alleged was contrary to the existing Civil Service Rules and Regulations of the City of Hialeah.

Vacation and sick leave accruals are governed by the provisions of rule XIII, sections 2 and 3 of the Hialeah Civil Service Rules and Regulations, an ordinance of the City of Hialeah, Florida. The City Council proceeded to impose terms of a collective bargaining agreement pursuant to Florida Statutes, section 447.403(4)(d).

As a result of the application of this imposed collective bargaining agreement, on August 28, 1985, the FOP filed suit in the United States District Court for the Southern District of Florida. FOP based its suit on 42 U.S.C. § 1983, as it sought to have the court declare unconstitutional the provisions of Florida Statutes, section 447.-403(4), which provides the means for resolving impasses reached in collective bargaining between public employers and public employee organizations in the state of Florida. FOP also sought a permanent injunction against the City of Hialeah, to prohibit it from unilaterally reducing employee benefits and to restore any employee benefits already impaired.

Both parties filed motions for summary judgment. After a hearing on March 24, 1986, the district court in a Memorandum Opinion denied FOP's motion for summary judgment, but granted the City's motion for summary judgment, and dismissed FOP's case with prejudice. FOP appeals to this court.

## DISCUSSION

We affirm the district court, based on the reasoning in the portion of the district court's Memorandum Opinion set forth below:

### Plaintiff's Due Process Claim

· The gravamen of FOP's due process claim is twofold. First, FOP contends that the statutory procedure for resolving an impasse in collective bargaining negotiation is unconstitutional because it provides for the legislative body which has been bargaining as a party to the contract to become a neutral body and decide what the final disposition of the collective bargaining process will be. See Fla.Stat. § 447.403(4)(a)-(e). The consequence of this procedure, FOP alleges, is a denial of a 'meaningful opportunity to be heard'—thus, a denial of due process. Second, FOP alleges that the City, pursuant to Fla.Stat. § 447.403(4)(d), retroactively reduced its sick leave and vacation benefits.[2] This action is purportedly a substantive due process violation as well as an unconstitutional impairment of the obligation of contract. Each contention will be considered.

### Was FOP Afforded Due Process?

FOP contends that it was not afforded due process because the City's role as an interested party in the collective bargaining negotiations prevented a meaningful hearing before the City Council during the impasse proceeding. The law clearly does not support this contention.

In *Ash v. Board of Education,* 699 F.2d 822 (6th Cir.1983) the board of education was a signatory to a collective bargaining agreement which reduced Teachers' salaries from the original amount stated in their employment contracts. The teachers were subsequently provided a hearing before the board. That hearing was part of the grievance procedure and the teachers, like FOP, presented their arguments and had ample opportunity to be heard. The Sixth Circuit determined that the hearing before the board was not tainted, consequently, it satisfied the minimum requirements of the due process clause.

Similarly, in *Morris v. City of Danville,* 744 F.2d 1041 (4th Cir.1984) the issue was whether a hearing before the city manager who fired a police chief comported with due process standards. The court stated:

'... we do not agree that under the circumstances of this case Church [the City Manager] ceased to be an impartial decision maker simply by virtue of having made a conditional decision to terminate Morris.

.    .    .    .    .

Administrative decisionmakers, like judicial ones, are entitled to a "presumption of honesty and integrity," (citations omitted) and absent a showing of bias stemming from an "extrajudicial source", they are not constitutionally precluded from making the determination that they are directed to make by their employer.'

744 F.2d at 1044.

The court concluded by holding that '[t]he district court accordingly erred in holding that merely by virtue of his prior participation in the proceedings leading to Morris' discharge, Church was in effect constitutionally disqualified to participate further, and in requiring that Morris be afforded a *de novo* hearing by persons other than Church.'

744 F.2d at 1046.

■ Applying the above principles to the facts at bar, the Court concludes that FOP was afforded a 'meaningful opportunity to be heard' before the City Council.[3] Moreover, FOP and the City Council had the benefit of a Special Masters' recommendations. Quite frankly, this Court cannot fathom how, on the one hand, the hearing before the City Council could be constitutionally sound as to the four issues which were resolved favorably to FOP, and, on the other hand, be characterized as unsound as to the two issues resolved unfavorably. The law does not recognize such an anomaly. In summary, the Court's review of the record demonstrates that the FOP was afforded a meaningful hearing. Accord-

ingly, the Florida statutory procedure for resolving an impasse in collective bargaining negotiations is not unconstitutional on its face or as applied.

### The Impasse Resolutions in Controversy

It is well established that the fourteenth amendment's due process protection of property interests extends to a public employee's legitimate expectation of continued employment. *Estes v. Tuscaloosa, Alabama,* 696 F.2d 898 (11th Cir.1983) (citing *Arnett v. Kennedy,* 416 U.S. 134 [94 S.Ct. 1633, 40 L.Ed.2d 15], (1974)). However, not all employment related grievances rise to the level of constitutional claims. *Estes, supra,* at 900. In order to invoke due process guarantees, there must be a constitutionally protected property or liberty interest. *Id.* These interests are created, not by a Constitution, but by an independent source such as state law. *Bd. of Regents v. Roth,* 408 U.S. 564, 577 [92 S.Ct. 2701, 2709, 33 L.Ed.2d 548] (1972). More specifically, an individual must have more than a unilateral expectation to rise to the level of a property interest for due process purposes—there must be a 'legitimate claim for entitlement.' *Id.* This Court, therefore, must examine the vacation and sick leave provisions in controversy to determine whether they are recognized property interests, and, if so, whether an unconstitutional deprivation occurred.

### Sick Leave Accrual

At the conclusion of the impasse hearing, the City Council adopted the Special Master's recommendation regarding the sick leave provisions. That recommendation set forth a plan which 'froze' the rate of payout at each employee's existing rate of pay on the effective date of the contract, July 17, 1985, rather than provide a 'floating' rate of payout.[4] The question then is whether the employees have a Constitutionally protected property interest in the future value of their

sick leave accrual which has already been earned.

FOP relies heavily on *Florida Sheriffs Ass'n v. Dept. of Admin.*, 408 So.2d 1033 (Fla.1981) and *State ex rel. Stringer v. Lee*, 2 So.2d 127 (Fla.1941) for the proposition that where a vested property interest exists the terms of that contractual relationship may not thereafter be adversely altered or effected. In *Fla. Sheriffs Assn., supra* the Florida Supreme Court examined a situation where the legislature has reduced prospectively from three to two percent the special risk credit that the plaintiffs had earned toward retirement. The plaintiffs had alleged that this was an impairment of their contract with the state.

After reviewing the chronology of case law, the court held that Fla.Stat. § 121.011(3)(d), the preservation of rights statute, 'vest[ed] all rights and benefits already earned under the present retirement plan so that the legislature may now only alter retirement benefits *prospectively*.' 408 So.2d at 1037 (emphasis in original). The court emphasized that its holding, which modified the prior rule that permitted the legislature to modify benefits *retroactively* or *prospectively* at any time, was based upon the preservation of rights statute. It is important to note that the Florida Supreme Court, in discussing the employee's property interest, concluded that absent a preservation of rights statute the employee's retirement benefits would vest at the time of retirement.[5]

▪ FOP's assertion of a property interest is without merit. First, it provides no analogous 'preservation of rights' statute which would allow for the immediate vesting of a payout rate. As a result, the facts *sub judice* fall squarely within the general rule stated in *Fla. Sheriffs Ass'n., supra,* and *ex rel Stringer, supra. See also Oberlander v. Perales*, 740 F.2d 116 (2d Cir.1984) (no valid property interest in future reimbursements). Second, FOP incorrectly concludes that the City *retroactively* altered the accrued time. No such modification or deduction occurred. Rather the City limited the amount of money which an employee could potentially receive at some future date. Moreover, the City generously provided each Plaintiff with a $1,000 cash award to compensate for any alleged loss.[6] Accordingly, FOP has no constitutionally protected property interest in a 'floating rate of pay' for the cash out of sick leave accrual. Future payments are simply not protected interests. As the Florida Supreme Court opined, the rationale for such a rule is patently obvious—

> ... To hold otherwise would mean that no future legislature could in any way alter future benefits of active employees for future services, except in a manner favorable to the employee. This view would, in effect, impose on the state the permanent responsibility for maintaining a retirement plan which could never be amended or repealed irrespective of the fiscal condition of this state. Such a decision could lead to fiscal irresponsibility.

408 So.2d at 1037.

▪ Additionally, FOP argues that the City's Civil Service Rules and Regulations are mandatory provisions which transform the payout rate into a 'legitimate claim for entitlement.'[7] At first blush, FOP's position appears sound. The very terms of the Civil Service Rules direct the calculation for the payout to be made at the employee's last rate of pay. However, FOP ignores completely the conflict between this result and that provided vis-a-vis the impasse procedure. Section 447.601, Florida Statutes, expressly resolves any conflict between a local civil service law and the statutory impasse procedure in favor of the state statute. Interpreting a similar conflict, the Florida Supreme Court stated:

> ... Accordingly, while the city has the authority to enact civil service ordinances, state statutes will take precedence over such ordinances when specific conflicts arise.
>
> .    .    .    .    .
>
> Indeed, this Court has long held as a general rule that a statewide statute

prevails over a conflicting municipal ordinance ... Accordingly, any conflict arising between 447.401 and the Civil Service Act of the City of Casselberry, Florida, must be resolved in favor of section 447.401.

*City of Casselberry v. Orange County Police Benevolent Ass'n.*, 484 [482] So.2d 336 (Fla.1986); *see also Hotel, Motel, Restaurant Employees and Bartenders Union, Local 737 v. Escambia County School Board*, 426 So.2d 1017 (Fla. 1st DCA 1983). In view of the clear statutory mandate and the supporting case authority, this Court rejects FOP's contention that the Civil Service Rules take precedent over the statutorily defined impasse procedures. Consequently, no property interest exists for the payout rate of accrued sick leave.

### Vacation Accrual

FOP also alleges a constitutional deprivation regarding its members accrued vacation time. The impasse resolution as passed at the City Council meeting states:

1) Vacation Accrual: That the plan stay as is with 30 days for current employees, and change to allow 20 days for new hirees.

*See* Exhibit 3 to Defendant's Motion for Summary Judgment.

■ The plain language of the resolution states that the ten (10) day reduction applies *only* to future employees. Clearly, no such property interest exists as to them. In *Oberlander v. Percales*, 740 F.2d 116 (2d Cir.1984) a medicare health provider sought relief because its medicaid reimbursement rate was reduced allegedly without due process. The Second Circuit looked to New York law and determined that there was no property interest in future reimbursements, however, it did determine that there was such an interest for 'recoupment of monies for services already performed....' 740 F.2d at 120. A review of Florida law indicates that there is no property right for vacation accrual as to future employees. *Fla. Sheriffs Ass'n, supra; ex rel. Stringer, supra; Voo-*

*rhees v. City of Miami*, [145 Fla. 402], 199 So. 313 (1940). It is difficult to comprehend how FOP could suggest that a property interest exists for unearned vacation time from nonexistent employees. Accordingly, FOP has suffered no constitutional deprivation.

### Impairment of Contract

■ Lastly, FOP alleges that the impasse resolutions imposed by the City Council impair its contract because those resolutions allow for vacation and sick leave accruals in terms other than that provided in the Civil Service Rules. As noted above, conflicts between those rules and the impasse resolutions are to be resolved in favor of the resolutions.[8] Moreover, as the Florida Supreme Court has indicated, FOP was free to exclude the—collective bargaining agreement from § 447.401 of the Florida Public Employees Relations Act—

... [A] union and a public employer would be perfectly within their rights to voluntarily exclude some aspect of their collective bargaining agreement from section 447.401 and utilize exclusively the dispute resolution machinery of a civil board. All that would be required is a mutual agreement to do so.

*City of Casselberry, supra* at 340. A review of the agreement attached to the Complaint reveals that FOP not only failed to exclude § 447.401 from its terms but rather specifically included it as a mandatory provision.[9] Whatever the results of the impasse procedure, FOP cannot now complain. FOP is bound by the terms and procedures to which it agreed.

### Conclusion

In light of the Collective Bargaining Agreement, the Florida Statutes and the relevant case authority, this Court concludes that Defendant City of Hialeah, Florida has demonstrated that it is entitled to judgment as a matter of law.[10] Accordingly, it is

ORDERED and ADJUDGED as follows:

1. Plaintiff's Motion for Summary Judgment is *denied*.

2. Defendant's Motion for Summary Judgment is *granted*. Judgment is entered in favor of Defendant City of Hialeah, Florida. This cause is dismissed with prejudice. The Court reserves jurisdiction in order to entertain an appropriate motion for costs and other relief.

2 *Vacation Accrual Time*—The Collective Bargaining Agreement imposed by the City vis-a-vis the impasse resolution process provides that all FOP employees hired after July 17, 1985 accrue only twenty (20) days of vacation time for the purpose of cash payout upon separation from service as opposed to the thirty (30) days provided by the civil service rules and regulations. FOP alleges that the vacation accrual time is property and that the City's 'unilateral reduction' of that time constitutes a deprivation of property without due process of law.

*Sick Leave Accrual*—The Sick Leave Accrual provisions are also allegedly controlled by the civil service rules and regulations. Those regulations establish the right to accrue up to 180 days sick leave upon separation from service at the employee's then existing rate of pay, despite the rate of pay at which the hours have been earned. The resolution imposed by the City 'froze' the cash-out value of all existing sick leave hours at the rate of pay which existed for each employee on July 17, 1985, the effective date of the new Collective Bargaining Agreement. This, FOP alleges, provides for a 'less generous program for the payout of future hours than that which exists under the civil service rules and regulations.' Plaintiff, therefore, contends that the freeze has 'deprived all existing employees of the economic value of the sick leave already earned and for labor which has already been rendered.' The result, allegedly, is a deprivation of property without due process of law.

3 The fundamental requirement of due process is the opportunity to be heard at a meaningful time and place. *Parratt v. Taylor*, 451 U.S. 540 [527, 101 S.Ct. 1908, 68 L.Ed.2d 420] (1981) (overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 [88 L.Ed.2d 662] (1986).

4 *See supra* note 2.

5 The court in reaching this conclusion, relied upon *State ex rel. Stringer v. Lee*, 2 So.2d 127 (Fla.1941) and stated that 'whether an voluntary or mandatory plan, once a participating member reaches retirement status, the benefits under the terms of the act in effect at the time of the employee's retirement vest.' 408 So.2d at 1036.

6 FOP also makes the erroneous assumption that all employees will separate from service at a rate of pay greater than that earned on July 17, 1985. This assumption ignores the possibility that an employee may be subject to demotion, or on a larger scale, that an across-the-board pay decrease could be instituted if the City sustained an economic crisis.

7 Section 3(h) of Rule XIII provides, in relevant part: 'Upon voluntary resignation, the employee shall be paid at his last rate of pay.... Upon death or retirement, the employee or his estate shall be paid at the employee's last rate of pay for all unused sick leave.'

8 *See* discussion *supra* pp. 8–9.

9 Article XX of the Agreement states: 'Any impasse in negotiation shall be dealt with in accordance with State Statutes and/or Regulations.'

Article XXXV states '... No impasse under this section shall not be subject to the Impasse procedure provided for in this Agreement.'

10 *Of course mindful that as movant, City has the burden of demonstrating that there are no material facts in dispute. *Adickes v. Kress & Co.*, 398 U.S. 144 [90 S.Ct. 1598, 26 L.Ed.2d 142] (1970). However, this standard must be viewed in light of the purpose of the summary judgment rule which is to preserve the Court from frivolous claims. *Redel's Inc. v. General Electric Co.*, 498 F.2d 95, 100 (5th Cir.1974).

**AFFIRMED.**