151 So.2d 430 (1963)
CITY OF JACKSONVILLE BEACH, a Municipal Corporation, et al., Petitioners,
v.
STATE of Florida on the relation of Fay O'Donald, Respondent.
No. 31907.
Supreme Court of Florida.
March 13, 1963.
Rehearing Denied April 16, 1963.
Stephen Stratford and Walter G. Arnold, Jacksonville, for petitioners.
Harry B. Fozzard, Jacksonville, for respondent.
THOMAS, Justice.
Fleming O'Donald, deceased husband of relator, was an employee of the petitioner-City and was a member of the City's pension fund created by Chapter 19914, Sp. Acts of 1939, as amended by Chapter 23371, Sp.Acts of 1945. He retired 1 September 1950 and thereafter until his death, 19 December 1960, received the sum of $137.36 per mouth which represented 50% of his average yearly salary for the three years preceding retirement.
The act provided that upon the death of a pensioner without children his widow should receive 75% of the amount theretofore paid the husband until she should die or remarry.
In 1951, the year after O'Donald had retired and started receiving the pension, a new, comprehensive retirement plan was enacted by the legislature in Chapter 27643. It secured to those who had already retired continued payment of their pensions but eliminated contingent benefits to a widow upon the death of her pensioner-husband. It was provided, however, that an employee could within six months of the effective date of the act exercise an option to take a reduced pension and have a certain amount paid upon his death to anyone he named who had an insurable interest in his life, and that any payments then being made to a widow should not be interrupted.
Relator's husband did not exercise the option but continued to receive monthly the amount of $137.36 until he died. The widow then made a demand for 75% of this sum. When her request was declined she sought by mandamus to secure the payments she alleged were due her under the contract between her husband and the City pursuant to Chapter 19914, supra, as amended. The writ of mandamus was quashed because the Circuit Judge concluded the relator had shown no clear legal right to it, and from *431 this order an appeal was taken to the District Court of Appeal, First District, which reversed the Circuit Court. State ex rel. O'Donald v. City of Jacksonville Beach, et al., Fla.App., 142 So.2d 349.
The District Court of Appeal certified to this court its decision as being one of great public interest so we proceed to determine the controversy as we are empowered to do by Sec. 4(2) of Art. V of the Constitution as amended in 1956, F.S.A.
The City and its officials, who had been defendants in the Circuit Court and appellees in the District Court of Appeal and who now assume the role of petitioners here, represent that the question with which the District Court of Appeal dealt was whether or not "a retired public employee or his contingent beneficiary have [sic] a vested or contractual right in a public pension plan so as not to be effected [sic] by subsequent legislation affecting the contingent beneficiary." And in their presentation they assert that the District Court of Appeal recognized the difference between mandatory and voluntary pension plans then applied the law governing voluntary plans to the system involved in this case which is mandatory "in nature."
We do not feel obliged to elaborate on the distinction between voluntary and mandatory retirement plans, even if, in view of the development of such systems and their obvious purposes not only to secure protection of employees but also to provide efficient public service by trained personnel, Greene et al. v. Gray et al., Fla., 87 So.2d 504, there is still occasion to retain the distinction. In the factual situation of this case an explanation of the origin and need for the distinction seem inapposite.
The right of the employee-husband vested at least at the time he actually retired. We adopt this premise although in State ex rel. Holton v. City of Tampa et al., 119 Fla. 556, 159 So. 292, 98 A.L.R. 501, it was indicated that even after the right to a pension vested, the legislature could modify the pension payments, but this was qualified by the language that such could be done affecting all employees "in the active service." The pronouncement was further qualified by the statement that this could be done as long as a reduction was not so great as to amount to a deprivation as distinguished from a regulation. Apparently a measure of this kind was said to be constitutional until the amount of reduction reached some indeterminate point then below that point would become unconstitutional.
Evidently the reference to employees "in the active service" was related to what the court called the peculiar wording of the act for the court so termed it and commented that the pensioner who was claiming the act to be unconstitutional because passed after his retirement was said to be receiving compensation not as an "ex-member of the Tampa Fire Department" but as a "`retired' fireman * * * still retained in service as a `member' of the fire department in his retired status."
These two elements, i.e., reduction within some bounds or other and designation of the pensioner at once as an ex-member of the fire department and as a retired fireman retained as a member of the fire department in retired status, are so contradictory and confusing as to shed no light upon the troublesome problem that faced the District Court of Appeal and now faces us. And certainly the language does not commit this court to a rule that a retirement plan can be so amended after one retires under it as to affect his rights.
We said in the Greene case, supra, that these retirement systems were sustained on the theory that "they contribute to efficiency in government; that they offer an added inducement to those with special skills and techniques to remain in government employment"; that they "tend to raise the standard of government personnel and make government service a career rather than a passing interlude." This is the latest expression of this court on the subject. It is not difficult to conceive how this theory would be exploded if prospective employees were told that, after a short service or a long one, the *432 legislature could, nevertheless, disturb the arrangement anytime it saw fit since all employees in a given category were required to be members of a standard plan.
So this litigation was precipitated, the widow contending that the contract was binding upon her husband's retirement by which she attained a vested right that could not be impaired by subsequent legislation while the City and its officials insisted that no such right vested and that any contingent right of the widow to pension would not vest until the death of the husband and would therefore be controlled by the law in effect at that time, which was, of course, the 1951 Act.
The District Court of Appeal faithfully digested all cases from this court on the general subject beginning with Anders et al. v. Nicholson, 111 Fla. 849, 150 So. 639, and ending with Gray v. Greene, supra, and came ultimately to the view that it was immaterial whether or not O'Donald had acquired a vested right before he retired but that at the very time of his retirement he did have a vested right of contract in all benefits conferred upon him by the law then in effect. We think this is the correct pronouncement of the law and that as a result he was entitled to receive the amount of pension then payable, as indeed he did receive it and as, by the amendatory act, it was secured to him.
All this devolves into the question of the effect upon the widow's right, i.e. could payments assured her under the original acts be affected by the second one or was her right so much a part of her husband's that it too vested at the time of retirement? It is argued by the petitioners that her right did not vest until his death so that the intervening amendatory act completely eliminated any payments to her unless the husband elected to take a lesser amount, which, in effect, he would be coerced to do, in order to secure to his widow an amount smaller than she would have been entitled to under the terms of the plan existing at the time of retirement. Thus the rights of both would be disturbed.
The importance of the protection of the employee's widow as well as himself was stressed in the Greene case, from which we have already freely quoted. Judge Wigginton, writing for the District Court of Appeal, stressed the concern which every normal employee would entertain for those dependent upon him should his ability to support them be terminated by death:
"The desire for security in the event of disability or during the declining years of life is of paramount concern to every conscientious breadwinner. The security he seeks is not only for himself, but for those who may be dependent upon him when he is no longer able to engage in active work and in the event of his death. In order to meet this social and economic need most pension or retirement plans provide for payment of benefits to the employee after retirement, and for reduced benefits to the employee's dependents after his death. To the responsible employee, the amount of retirement pay he will receive is of no greater importance to his happiness and peace of mind than is the assurance that after his death his dependents will be cared for to the extent of the benefits provided by the plan in which he is a participant."
We conclude that the security for the widow, relator, was an inseparable part of the right vested in the pensioner when he retired, was as valuable a consideration for his entering the service to the City as the provisions for payment of pension to himself, and was important to the City as an inducement to the long, faithful, loyal service that ended when retirement time came and years had passed which he could not recapture. That such a plan would accomplish its purpose if after the right vested, the legislature could force the husband to take a lessor amount and upon his failure *433 to accept the reduction leave his widow without the income anticipated at the beginning of the relationship of employer and employee is unthinkable.
We agree with the District Court of Appeal that the right of the widow vested simultaneously with that of her husband and was not impaired by the amendatory act.
ROBERTS, C.J., and TERRELL, DREW and THORNAL, JJ., concur.