LETTS, Chief Judge.
At issue here is whether a City can amend its pension plan to lower the mandatory age at which firemen must retire, from 55 to 50 years of age. We conclude that it can and reverse the trial court.
The particular Fire Captain now before us was first employed as a fireman by the City in 1957 at age 33 and had risen to the rank of Captain by the time of his forced retirement in 1977.[1] For some considerable *1276 period prior to said retirement, the Fire Captain had belonged to the City Employees Pension Plan, but in 1972 that pension plan was abolished and the City established two new ones. The first of these was labeled the General Employees Retirement System under which employees would not have to retire until 65 years old and the second plan was the Police and Firefighter’s Retirement System under which they would have to retire ten years earlier, at age 55. Every city employee was required to belong to one or other of these plans but the Fire Captain for example could choose whichever of the two he wanted. • It is this option to choose which forms the principal basis for this appeal.
It is not argued that a City cannot reduce the retirement age of its firemen prospectively. The question presented is whether they can reduce it retroactively, thus adversely affecting those who became participants when the retirement age was more generous.
The basic law appears to be that public employees have no vested rights under a pension statute even though they are required to make contributions under the plan. State ex rel. Holton v. City of Tampa, 119 Fla. 556, 159 So. 292 (1934); Voorhees v. City of Miami, 145 Fla. 402, 199 So. 313 (1940). However, there is an important exception where municipal pension plans are involved and the participation is voluntary. If the employee is not required to contribute to the pension plan and does so solely on a volunteer basis then in such event the benefit “may not be modified or reduced by subsequent amendatory legislation for the reason that those electing to participate in such voluntary plans acquire vested rights of contract .... ” State ex rel. O’Donald v. City pf Jacksonville Beach, 142 So.2d 349, 353 (Fla. 1st DCA 1962), aff’d, 151 So.2d 430 (Fla.1963). On the other hand, the same O’Donald opinion, beautifully expressed and reasoned by the late Judge Wigginton, also held that if the participation is mandatory, the benefits may be modified providing the employee is still in active service at the time of the amendment and also providing “the amendment does not reduce the benefits to such an unreasonable extent as to justify the inference that deprivation and not reasonable regulation was the legislative object in view.” O’Donald', supra, 142 So.2d at p. 352.
In the case at bar there is no question but that the Fire Captain was still in active service at the time of the amendment. Likewise there is no argument that the legislative object in view amounted to a deprivation (although this individual Fire Captain suffered a loss) inasmuch as the amendment increased the basic benefits. The crucial question is: Was the participation voluntary?
The Fire Chief argues that it was voluntary because he had a choice of one plan or the other. We cannot agree. He had to mandatorily participate in the city’s pension scheme and his election was limited to which set of benefits he wished to have cover him. That is not a voluntary participation which to us, by definition, would permit him not to partake in the pension scheme at all.
We are not sure we like the result in this case, but it appears to presently be the law of Florida. Yet is does not quite comport with the language used by the supreme court in its affirmance of the O’Donald case. See City of Jacksonville Beach v. State, 151 So.2d 430 (Fla.1963). In this latter opinion, much was made of why these retirement systems should be sustained on the theory that “they offer an added inducement to those with special skills and techniques to remain in government employment ... and make government service a career rather than a passing interlude .... It is not difficult to conceive how this theory would be exploded if prospective employees were told that, after a short service or a long one, the legislature could, nevertheless, disturb the arrangement any *1277 time it saw fit since all employees in a given category were required to be members of a standard plan.” Id. at 431 — 432.
It is true that the supreme court version of O’Donald was fortified by the fact that Mr. O’Donald had in fact retired at the time of the amendment unlike the case now before us. This being so and in the light of the Supreme Court’s declaration about holding such plans sacrosanct, we wonder whether the result would not have been the same even if Mr. O’Donald had still been in active service at the time of the amendment.
There can be no doubt that the Fire Chief now before us suffered a large pecuniary loss by reason of his early retirement and certainly the matter is of great public importance to career public service employees. As a consequence, we certify the following question to the supreme court:
DOES THE SUPREME COURT DECISION IN CITY OF JACKSONVILLE BEACH v. STATE, SUPRA, PERMIT MUNICIPALITIES TO LOWER RETIREMENT AGES THUS ADVERSELY AFFECTING THE INCOMES OF PUBLIC EMPLOYEES WHO JOINED THE MANDATORY RETIREMENT SYSTEM AT A TIME WHEN IT PROVIDED FOR RETIREMENT AT AN OLDER AGE?
REVERSED AND REMANDED FOR ENTRY OF A JUDGMENT IN ACCORDANCE HEREWITH.
ANSTEAD and HURLEY, JJ., concur.

. He thus was 53 rather than 50. However, the 50 year old retirement was subject to the passage of a minimum of twenty (20) years employment which twenty years was concluded in 1977.