408 So.2d 1033 (1981)
FLORIDA SHERIFFS ASSOCIATION, James Scott, Sheriff of Jefferson County, etc., et al., Appellants,
v.
DEPARTMENT OF ADMINISTRATION, DIVISION OF RETIREMENT, State of Florida  Wallace Henderson, etc., et al., Appellees.
FLORIDA POLICE BENEVOLENT ASSOCIATION, INC., etc., et al., Appellants,
v.
DEPARTMENT OF ADMINISTRATION, DIVISION OF RETIREMENT, State of Florida  Wallace Henderson, Etc., et al., Appellees.
Nos. 55419, 55382.
Supreme Court of Florida.
December 10, 1981.
Rehearing Denied February 15, 1982.
Jack M. Skelding, Jr. of Madigan, Parker, Gatlin, Swedmark & Skelding, Tallahassee, for Florida Sheriffs Ass'n, et al.
Edward S. Jaffry of Horne, Rhodes, Jaffry, Stephens, Bryant, Horne & Chapman, Tallahassee, for Florida Police Benevolent Ass'n, Inc., et al.
David V. Kerns, Gen. Counsel, Tallahassee, for Dept. of Administration.
Stephen S. Mathues, Asst. Division Atty., Tallahassee, for Division of Retirement.
*1034 OVERTON, Justice.
This is an appeal by special risk law enforcement members of the Florida Retirement System created by chapter 121, Florida Statutes (1971), asserting the unconstitutionality of sections 121.091(1)(a) and .091(11), Florida Statutes (1979). By this act, the legislature reduced prospectively from three percent to two percent the special risk credit these members earn toward retirement. Appellants contend that the legislature is contractually bound by its prior legislative act, and any reduction in the amount present employees can earn toward future retirement is a constitutionally prohibited impairment of the employees' contract with the state. We reject this contention and find that the legislature has the authority to prospectively modify or amend the mandatory, noncontributory retirement plan.
To fully understand governmental retirement plans, it is important to define certain terms. First, it is necessary to distinguish a "mandatory retirement plan" from a "voluntary retirement plan." In a mandatory plan, the employee is required to participate. In a voluntary plan, the employee has complete choice in whether to participate. Second, we distinguish a "noncontributory retirement plan" from a "contributory plan." In a noncontributory plan, the employer contributes the entire amount to the retirement fund for the employee. In a contributory plan, both the employer and the employee must contribute to the retirement fund. Each of these terms is interrelated but not interdependent; both a mandatory and voluntary system can be contributory or noncontributory. For example, a mandatory plan may require the employee to contribute part of his pay to the system or, if noncontributory, the employer would contribute the entire amount necessary for the plan's operation.
The circumstances behind this suit are essentially undisputed. We set them forth chronologically:
(1) On December 1, 1970, the legislature consolidated all existing retirement systems into a mandatory, contributory plan by the enactment of chapter 70-112, Laws of Florida (codified as chapter 121, Florida Statutes (1971)). Appellants are members of this system.
(2) In accordance with section 121.091(1)(a), Florida Statutes (1973), appellants, as law enforcement officers, received a "special risk credit" as an extra benefit. Before July 1, 1974, the credit equaled two percent of the officers' average monthly income.
(3) Effective July 1, 1974, the legislature enacted a "preservation of rights" provision, section 121.011(3)(d), providing:
The rights of members of the retirement system established by this chapter shall not be impaired by virtue of the conversion of the Florida Retirement System to an employee noncontributory system. As of July 1, 1974, the rights of members of the retirement system established by this chapter are declared to be of a contractual nature, entered into between the member and the state, and such rights shall be legally enforceable as valid contract rights and shall not be abridged in any way.
(4) Effective October 1, 1974, the legislature enacted chapter 74-376, Laws of Florida, amending section 121.091(1)(a), to increase the special risk credit from two to three percent.
(5) On January 1, 1975, the retirement plan changed from a contributory to a noncontributory plan, the state assuming the full burden of making the plan actuarially sound. § 121.071, Fla. Stat. (1975). Employees, therefore, no longer were required to contribute.
(6) Effective October 1, 1978, the legislature enacted chapter 78-308, section 6, Laws of Florida (codified as section 121.091(1)(a), .091(11), Florida Statutes (1979)), reducing prospectively the special risk credit from three to two percent.
Appellants commenced this action in circuit court, contending that the "preservation of rights" provision of section 121.011(3)(d), enacted in 1974, elevated Florida's retirement system to a binding contractual *1035 relationship between employees and the state. Appellants argue that reduction of special risk credit impaired this contractual right and thus violated article I, section 10, Florida Constitution.[*] The trial court entered judgment against appellants, granting the Department of Administration's motion for summary judgment, saying: "The court fails to find any vested contractual right in [appellants] which would have been impaired by the act of the state." We find this an inherent ruling on the constitutional validity of sections 121.091(1)(a), .091(11), Florida Statutes (1979), which vests jurisdiction in this Court pursuant to article V, section 3(b)(1), Florida Constitution (1972).
Prior to the statutory enactment of the preservation of rights provision in 1974, there was considerable Florida case law which established basic legal guidelines for governmental retirement systems in the state. It is necessary to fully discuss these cases to best understand the intent of the legislature in enacting this provision. In an early decision, this Court expressly held that Florida's constitutional impairment of contract provision did not protect a governmental mandatory retirement system and that the legislature could modify or alter benefits provided by such a retirement plan. Anders v. Nicholson, 111 Fla. 849, 150 So. 639 (1933).
Although the Anders case involved a voluntary, contributory retirement plan, the Court discussed the principles applicable to both mandatory and voluntary plans. In Anders, the employee was a participant in the City of Jacksonville's voluntary retirement system. When originated in 1919, the pension fund provided that, upon discharge, an employee who participated in the plan could withdraw his contributions in full plus four percent interest. Subsequently in 1925, the city amended the plan to allow, upon discharge, only a refund of fifty percent of the amount personally contributed by the employee without interest. The employee was terminated in 1932 and sought to obtain the full amount of his contributions with interest under the 1919 act. The city contended that the provisions of the 1925 act controlled and thus the employee should only receive one-half of his contributed amount without interest. The Court held that, because the plan was voluntary, contractual principles applied and the employee had a contractual right in the amount of his contributions up to the date of the retirement plan's amendment in 1925. The Court determined that the employee could receive all contributions paid plus interest in accordance with the 1919 act before the 1925 act's effective date, but, because he acquiesced in the terms of the 1925 act by continued participation in the plan after 1925, he could only receive fifty percent of his payment without interest after the effective date.
The decision went further to point out that an employee under a mandatory pension system would not be similarly protected. Quoting from a prior decision, the Court said:
"It is also settled that constitutional provisions against impairing the obligation of a contract do not apply to obligations imposed by the law without the assent of the party bound, even though by a legal fiction they may be enforced in an action in form ex contractu. In other words, the classes of contracts protected are voluntary  that is, based on the assent of the parties, expressly or impliedly given. That class of obligations, aptly styled `quasi contracts,' is not embraced within the constitutional guaranty against the passage of a law violating the obligation of a contract... ."
Quasi contracts are defined in 13 C.J. 244, as:
"A class of obligations which are imposed or created by law without regard to the assent of the party bound, on the ground that they are dictated by reason and justice, and which are allowed to be *1036 enforced by an action ex contractu. They rest solely on the legal fiction and are not contract obligations at all in the true sense, for there is no agreement."
Id. at 855-56, 150 So. at 642 (citations omitted).
Shortly after Anders, this Court held that, even where an employee had already retired, the legislature had the authority to reduce the retirement benefits under a mandatory plan. State ex rel. Holton v. City of Tampa, 119 Fla. 556, 159 So. 292 (1934). The Holton court based its decision in part on Anders and noted that, under the peculiar wording of the specific pension act, the city considered a retired employee as an employee in active service, and, as such, the retired employee was bound by the amendatory acts which reduced pension benefits the same as an active employee.
The authority of the legislature to change a retirement plan for existing employees was the issue in Voorhees v. City of Miami, 145 Fla. 402, 199 So. 313 (1940). In this case, active employees of the City of Miami entitled to retirement benefits under the city's original mandatory retirement act instituted the action. This Court held that a subsequent amendatory act repealing the original retirement plan and substituting a new one in its place was valid and binding on all employees of the city, including the participants of the original pension plan.
The Court said:
[T]he rights of a person in such a pension fund, even though he contributes to its maintenance, are not such as will prevent the Legislature from repealing or amending the statute, merely because the officer or employee has contributed to the fund so long as the fund existed and the law stood unrepealed.
Id. at 408, 199 So. at 315.
The "active employee" distinction discussed in Holton is important when considering our more recent decision in City of Jacksonville Beach v. State ex rel. O'Donald, 151 So.2d 430 (Fla. 1963), in which we affirmed an extensive opinion rendered by Judge Wigginton of the First District Court of Appeal, reported at 142 So.2d 349 (Fla. 1st DCA 1962). In affirming, we held that the right of a public employee in either a voluntary or mandatory governmental retirement plan "vested at least at the time he actually retired." This Court noted that City of Jacksonville Beach was not in conflict with our prior decision in Holton because the legislative alteration of benefits in Holton affected employees in active service and held that an alteration of the benefits for an active employee could be done as long as the reduction did not amount to an unjustified deprivation, as distinguished from a reasonable regulation. This Court did not overrule Anders, Holton, or Voorhees in City of Jacksonville Beach but discussed each case at length and approved the digest of principles and law which each case established.
Although, by the foregoing decisions, this Court has stated that the legislature can alter retirement benefits of active employees, the Court has also expressly held that, whether in a voluntary or mandatory plan, once a participating member reaches retirement status, the benefits under the terms of the act in effect at the time of the employee's retirement vest. The contractual relationship may not thereafter be affected or adversely altered by subsequent statutory enactments. City of Jacksonville Beach, State ex rel. Stringer v. Lee, 147 Fla. 37, 2 So.2d 127 (1941).
Appellant employees argue in the instant case that the 1974 enactment of the "preservation of rights" provision changed the case law and made Florida's retirement system an absolute and binding contractual relationship between employees and the state. By this act, the employees urge, the legislature agreed that it would not abridge those rights by unilateral action at any future time. Appellants base their argument upon that part of section 121.011(3)(d) which states: "[T]he rights of members of the retirement system established by this chapter are declared to be of a contractual nature entered into between the member and the state and such rights shall be legally enforceable as valid contract rights and shall not be abridged in any way." Appellants *1037 assert that this statutory provision eliminates the Anders-Holton rationale.
We agree that this statutory provision does alter the Anders-Holton rationale for benefits already earned by active employees up to the time the legislature changes the law. Under the prior case law, if the retirement system was mandatory as it is now, the legislature could at any time alter the benefits retroactively or prospectively for active employees. This principle was clearly established in Voorhees. That rule of law has now been changed by the "preservation of rights" section which modifies the Voorhees rule and vests all rights and benefits already earned under the present retirement plan so that the legislature may now only alter retirement benefits prospectively.
We stress that the rights provision was not intended to bind future legislatures from prospectively altering benefits which accrue for future state service. To hold otherwise would mean that no future legislature could in any way alter future benefits of active employees for future services, except in a manner favorable to the employee. This view would, in effect, impose on the state the permanent responsibility for maintaining a retirement plan which could never be amended or repealed irrespective of the fiscal condition of this state. Such a decision could lead to fiscal irresponsibility. It would also impose on state employees an inflexible plan which would prohibit the legislature from modifying the plan in a way that would be beneficial to a majority of employees, but would not be beneficial to a minority. Since two different plans cannot exist for the same type of employee, the implementation of appellants' contention would also bind the legislature to this plan for future employees. We find appellants' contention is not in accordance with the intent of the legislature and conclude that the legislature has the authority to modify or alter prospectively the mandatory, noncontributory retirement plan for active state employees.
In the instant case, special risk employees received two percent special risk credit prior to October 1, 1974. From October 1, 1974, to October 1, 1978, they received a special risk credit of three percent. The legislature then changed the credit back to two percent. Because of the preservation of rights statutory provision, the legislature could not take away the additional one percent earned from October 1, 1974, to October 1, 1978, but it could change the rate for future services subsequent to October 1, 1978.
Accordingly, we hold that there was no impairment of any statutorily created contract rights which prohibits prospective reduction of special risk credit. The trial court order granting summary judgment to appellees is affirmed.
It is so ordered.
SUNDBERG, C.J., and BOYD, ALDERMAN and McDONALD, JJ., concur.
ADKINS, J., dissents.
NOTES
[*] Prohibited Laws.  No bill of attainder, ex post facto law or law impairing the obligation of contracts shall be passed. (Emphasis ours.)