BOOTH, Judge.
These consolidated cases are before us on appeal from final orders of the Retirement Commission determining that appellants are not entitled to special risk classification in the State Retirement System. Appellants challenge the constitutionality of Section 121.0515(4), Florida Statutes (1978); alternatively, they assert that the statute was improperly interpreted and applied by the agency. We affirm the agency’s orders, with the exception of those cases which we remand to the agency for clarification or reconsideration in light of changes in the statutory law which have occurred since the proceedings below.
On December 1, 1970, the Florida Legislature consolidated all existing retirement systems into a mandatory, contributory plan by the enactment of Chapter 70-112, Laws of Florida, codified as Chapter 121, Florida Statutes (1971). Appellants are members of this system and classified as *160 “special risk members,” [1] making them eligible, under certain conditions, for retirement at an earlier age than “regular members” [2] and entitling them to a “special risk credit” as an extra benefit.[3]
Effective July 1, 1974, the Legislature enacted a “preservation of rights” provision, Section 121.011(3)(d), Florida Statutes, providing:
(d) The rights of members of the retirement system established by this chapter shall not be impaired by virtue of the conversion of the Florida Retirement System to an employee noncontributory system. As of July 1,1974, the rights of members of the retirement system established by this chapter are declared to be of a contractual nature, entered into between the member and the state, and such rights shall be legally enforceable as valid contract rights and shall not be abridged in any way.
On January 1, 1975, the retirement plan changed from a contributory to a noncontributory plan, the State assuming the full burden of making the plan actuarially sound; employees were no longer required to contribute. Section 121.071, Florida Statutes (1975).
Prior to amendment of Chapter 121 by Section 121.0515, Florida Statutes (1978), the statute did not specify the criteria which applied to special risk membership. Until October 1, 1978 (the effective date of the amendment), “special risk member” was defined by Section 121.021(15), Florida Statutes (1975), as follows:
[A]ny officer or employee whose application is approved by the administrator and who receives salary payments for work performed as a peace officer; law enforcement officer; policeman; highway patrolman; custodial employee at a correctional or detention facility; correctional agency employee whose duties and responsibilities involve direct contact with inmates, but excluding secretarial and clerical employees; fireman; or an employee in any other job in the field of law enforcement or fire protection if the duties of such person are certified as hazardous by his employer.
Effective October 1,1978, amended Section 121.021(15)(b) clarified the term “special risk member” to mean a member who is designated as a special risk member by the Division in accordance with Section 121.-0515, employed as a law enforcement officer, a fire fighter, or a correctional officer, and who meets certain other special criteria as set forth in Section 121.0515(2). Section 121.0515(1) states the legislative intent as follows:
(1) LEGISLATIVE INTENT. — In creating the special risk class of membership within the Florida Retirement System, it is the intent and purpose of the Legislature to recognize that persons employed in certain categories of law enforcement, firefighting, and criminal detention positions are required as one of the essential functions of their positions to perform work that is physically demanding or arduous, or work that requires extraordinary agility, and mental acuity, and that such persons, because of diminishing physical and mental faculties, may find that they are not able, without risk to the health and safety of themselves, the public, or their coworkers, to continue performing such duties *161 and thus enjoy the full career and retirement benefits enjoyed by persons employed in other positions and that, if they find it necessary, due to the physical and mental limitations of their age, to retire at an earlier age and usually with less service, they will suffer an economic deprivation therefrom. Therefore, as a means of recognizing the peculiar and special problems of this class of employees, it is the intent and purpose of the Legislature to establish a class of retirement membership that awards more retirement credit per year of service than that awarded to other employees; however, nothing contained herein shall require ineligibility for special risk membership upon reaching age 55.
In 1982, the Legislature further amended the statute, retroactive to October 1, 1978, to include as special risk a law enforcement officer who is an active member of a bomb disposal unit, or the supervisor of such a member,[4] and to provide that a special risk member who is moved or reassigned to a non-special-risk law enforcement, fire fighting, or correctional administrative support position may apply the service in such a position toward satisfaction of the speeial risk normal retirement date, under certain conditions.[5] Rule 22B-1.05, promulgated by the Department of Administration, implements the statute.[6]
*162 Appellants assert that the statutory-amendment limiting special risk membership to those who satisfy its criteria unconstitutionally abridges vested contract rights. In Grady v. Division of Retirement, 387 So.2d 419 (Fla. 1st DCA 1980), this court held that since none of the appellants in that case had either retired or satisfied those conditions of the law authorizing a member’s entitlement to pension benefits before the legislation in question was enacted, none had any vested right to retirement benefits which are available to those who meet the current criteria applicable to such classifications. In Florida Sheriffs Association v. Department of Administration, Division of Retirement, 408 So.2d 1033 (Fla.1981), the Florida Supreme Court held that the July 1, 1974 “preservation of rights” provision of the Florida Retirement System statute vested all rights and benefits previously earned, but was not intended to bind future legislatures from prospectively altering benefits which accrue for future State service. We hold that Section 121.0515 is constitutional and does not impair appellants’ vested rights.
Appellants’ second assertion is that the agency improperly interpreted and ap *163 plied certain of the statutory requirements for special risk membership. A majority of the appellants have sought special risk status under the provisions of Section 121.-0515(2)(a), Florida Statutes, as certified law enforcement officers whose duties and responsibilities “include the pursuit, apprehension, and arrest of law violators and suspected law violators.” In denying special risk status sought under this category, the Division has relied upon its interpretation of the statute to include only those law enforcement officers whose “regular and actual,” as opposed to “theoretical,” duties include the pursuit, apprehension, and arrest of law violators. The Division bases this interpretation upon the expressed intent of the Legislature to include as “special risk” persons employed in certain categories who are required as one of the essential functions of their positions to perform work that is physically demanding or arduous, or work that requires extraordinary agility and mental acuity. Section 121.-0515(1), Florida Statutes, supra. If the basis of the Division’s denial of special risk status is its finding that the appellants who claim special risk under this category do not satisfy the requirements of the statute because the pursuit, apprehension, and arrest of law violators is not one of the essential functions of their positions, but only an incidental duty that is imposed upon all sworn law enforcement officers, we find that this interpretation is reasonably within the spirit and intent of the statute. However, language in some of the Commission’s final orders indicates that the standard applied by the Division may require that law enforcement officers have as their “primary duties” the pursuit, apprehension, and arrest of law violators. We find this interpretation to be an unreasonable one, beyond the authority of the agency and contrary to the legislative intent.[7] We therefore remand to the agency those cases in which special risk membership was sought and denied under this category, for clarification by the agency of its interpretation of the statute and the basis for its finding as to each appellant found not to qualify for special risk membership under Section 121.0515(2)(a).
Because the statute has been amended subsequent to the proceedings below, to include as special risk any law enforcement officer who is “an active member of a bomb disposal unit whose primary responsibility is the location, handling, and disposal of explosive devices” and the supervisor or command officer of a member or members who have such responsibilities, Section 121.0515(2)(a), Florida Statutes (1982), those appellants who qualify under this category may seek special risk membership under this provision and should have the issue decided by the agency, after appropriate proceedings. We therefore remand to the agency for that purpose those cases to which this amendment may apply.[8]
We find reasonable the agency’s interpretation of the term “supervisor” in Section 121.0515(2)(a) to mean only those whose duties and responsibilities include the immediate supervision of special risk members and its findings that the Legislature did not intend to extend special risk benefits to those in positions of remote supervision along the chain of command, several steps removed from the special risk members. Competent, substantial evidence in the record supports the agency’s findings that none of the appellants satisfy this requirement for special risk membership, *164 and we affirm the denial of special risk membership sought on this basis.
Under the category “correctional officer” of Section 121.0515(2)(c), the Division of Retirement interprets the term “superintendent” to mean only the person in charge of day-to-day operation of each individual detention facility, regardless of his title.[9] Although this definition differs from the Department of Corrections’ definition of “superintendent,” the Division of Retirement is not bound by another agency’s definition. The Division’s interpretation of the statute is reasonably within the spirit and intent of the statute. Competent, substantial evidence in the record supports the agency’s finding that none of the appellants who have applied for special risk membership under Section 121.0515(2)(c) meet this definition of superintendent. We therefore affirm the agency’s denial of special'risk membership to Hillman, Kassoff, and Gallagher on the basis of this category.
Hillman, Gallagher, Darpini, and Lynch have sought special risk status under the category for correctional officers whose “primary duties and responsibilities must be the custody, and physical restraint when necessary, of prisoners or inmates,” Section 121.0515(2)(c), Florida Statutes. Competent, substantial evidence in the record supports the agency’s finding that custody and control is not the primary duty of any of these appellants, as required by the statute. We therefore affirm the agency’s finding that these appellants do not qualify for special risk status under this category.
We affirm the agency’s denial of special risk membership in each of these cases, with the exception of those cases previously indicated for remand, and as to those cases, we remand for reconsideration and clarification in accordance herewith.
LARRY G. SMITH and SHIVERS, JJ., concur.

. Except appellants Gonzales, Richter, and Lowe.

. Regular members may retire at age 62 after ten or more years of creditable service or after 30 years of creditable service, regardless of age; a special risk member may retire at age 55 after ten or more years of creditable service, after 25 continuous years of creditable service, regardless of age, or at age 52, after 25 years of creditable service.

. The amount of the monthly retirement benefit is calculated by multiplying the member's average monthly compensation by the number of years of creditable service times a percentage. For "regular members” this percentage is 1.6 percent, up to the member’s normal retirement age (and thereafter increases to a maximum of 1.68 percent); for a "special risk member,” the percentage is two percent for all creditable years of special risk service prior to October 1, 1974, three percent thereafter until October 1, 1978, and two percent thereafter. See Section 121.091, Florida Statutes (1981).

.Section 121.0515(2), Florida Statutes (1982), provides, in pertinent part:
(2) CRITERIA. — A member, to be designated as a special risk member, must meet the following criteria:
(a)The member must be employed as a law enforcement officer and be certified in compliance with s. 943.14, or be on temporary waiver as provided by s. 943.14 until certified; however, sheriffs and elected police chiefs shall be excluded from meeting the certification requirements of this paragraph. In addition, the member’s duties and responsibilities must include the pursuit, apprehension, and arrest of law violators or suspected law violators; or the member must be an active member of a bomb disposal unit whose primary responsibility is the location, handling, and disposal of explosive devices; or the member must be the supervisor or command officer of a member or members who have such responsibilities; provided, however, administrative support personnel, including but not limited to, those whose primary duties and responsibilities are in accounting, purchasing, legal, and personnel, shall not be included.

(c) The member must be employed as a correctional officer and be certified in compliance with s. 944.585. In addition, the member’s primary duties and responsibilities must be the custody, and physical restraint when necessary, of prisoners or inmates within a prison, jail, or other criminal detention facility, or while on work detail outside the facility, or while being transported; provided, however, administrative support personnel, including, but not limited to, those whose primary duties and responsibilities are in accounting, purchasing, legal, and personnel, shall not be included; however, superintendents and assistant superintendents shall participate in the special risk class.

. While in such position, the member remains certified as a law enforcement officer, fire fighter, or correctional officer; remains subject to reassignment at any time to a position qualifying for special risk membership; and completes an aggregate of ten or more years of service as a designated special risk member prior to retirement. Section 121.0515(7)(a), Florida Statutes.

. Rule 22B-1.051, F.A.C.:
22B-1.051 Criteria for Special Risk Membership — Law Enforcement. The criteria set forth below shall be used pursuant to Section 22B-1.05 in determining membership in the special risk class for members who are filling law enforcement positions, regardless of title of such a position.
(1) Any member, except a sheriff or an elected police chief, who seeks to be approved for special risk membership under this section must be issued one of the following from the Police Standards and Training Commission established by Chapter 943, Florida Statutes:
(a) Certificate of Compliance (or valid temporary waiver of certificate of compliance); or,
(b) Certificate of Comparative Compliance; or,
(c) Certificate of Recognition; or,
(d) Any other document issued by the Commission that certifies the employee’s compliance with Section 943.14, F.S.
(2) Any member who seeks special risk membership must hold one of the following law enforcement positions:
(a) Sheriff or elected police chief (certificate issued pursuant to (1) above not required); or,
(b) Law enforcement officer whose duties include the pursuit, apprehension and arrest of law violators or suspected law violators; or,
*162 (c) Command officer or supervisor of a special risk member or members whose duties include the pursuit, apprehension and arrest of law violators or suspected law violators. However, administrative support personnel cited in subsection 3 shall not be included.
(3) Except for those cited in (2)(a) above, no administrative support personnel, including but not limited to those whose primary duties and responsibilities are in accounting, purchasing, legal, and personnel, shall be admitted to special risk membership.
Amended in 1982 as follows:
(2)

(c) Active member of a bomb disposal unit whose primary responsibility is the location, handling, and disposal of explosive devices.
(d) Command officer or supervisor of a special risk member or members whose duties include the pursuit, apprehension and arrest of law violators or suspected law violators or members of a bomb disposal unit. However, administrative support personnel cited in Subsection (3) shall not be included.

Rule 22b-1.053, F.A.C.:

22B-1.053 Criteria for Special Risk Membership — Correctional Officers. The criteria set forth shall be used pursuant to Section 22B-1.05 in determining membership in the special risk class for members who are filling correctional officer positions, regardless of the title of such a position.
(1)Any member who seeks to be approved for special risk membership under this section must be issued one of the following from the Correctional Standards Council established by Chapter 944, Florida Statutes:
(a) Certificate of Compliance; or,
(b) Certificate of Recognition; or,
(c) Certificate of compliance that indicates compliance with Section 944.585, F.S.; or,
(d) Any other document issued by the Council that certifies the employee's compliance with Section 944.585, F.S.
(2) Any member who seeks special risk membership must hold one of the following correctional officer positions:
(a) Correctional officer whose primary duty and responsibility is the custody and physical restraint, when necessary, of prisoners or inmates within a prison, jail, or other criminal detention facility, or while on work detail or while being transported outside the facility.
(b) Superintendent or Assistant Superintendent (regardless of title) of a correctional or detention facility that maintains custody c prisoners or inmates and employs correction al officers. However, an Assistant Superintendent, regardless of title, whose primary duties are in administrative support as cited in (3) below shall not be included.
(3) No administrative support personnel, including but not limited to those whose primary duties and responsibilities are in accounting, purchasing, legal, and personnel, shall be admitted to special risk membership.
Amended in 1982 as follows:
(2)

(b) Superintendent or Assistant Superintendent (regardless of title) of a correction or detention facility where duly committed inmates are confined, housed, or maintained and where correctional officers are employed. Superintendent shall mean the person directly in charge of the day to day operations of a specific correction or detention facility. Assistant Superintendent shall mean the one person whose responsibilities include direct line authority from the Superintendent over all subordinate employees for the day to day operations at the facility. If no one employee in a corrections facility has such responsibility, then for retirement purposes there is no assistant superintendent at that facility.

. Section 121.0515(2)(a), Florida Statutes, expressly excludes from special risk membership law enforcement officers "whose primary duties and responsibilities are in accounting, purchasing, legal, and personnel.” Subsection (2)(c) contains a similar exclusion, but also provides, as to correctional officers, that to be designated as special risk “the member’s primary duties and responsibilities must be the custody, and physical restraint when necessary, of prisoners or inmates.” There is no equivalent provision in the statute as to law enforcement officers. The Legislature did not impose the "primary duty” requirement as to law enforcement officers, and the agency is without authority to add this requirement by interpretation.

. The parties have indicated that these may number as many as 14.

. This non-rule policy, upon which the agency relied in denying special risk membership to those who applied under the "superintendent" criterion, was sufficiently explicated and supported by the record to permit judicial review of its actions. Rule 22B-1.053(2)(b), as amended in 1982, codified the agency’s definition of "superintendent” and "assistant superintendent." (See Footnote 6). We note that the unamended rule improperly denied special risk membership to "an Assistant Superintendent, regardless of title, whose primary duties are in administrative support,” contrary to the clear legislative intent. However, this incorrect interpretation of the statute is not at issue here, since none of the appellants who have sought special risk membership under this criterion meet the basic definition of "assistant superintendent,” nor do any of them bear that title.