PARIENTE, J.,
concurring.
I fully concur in the majority’s opinion but write separately to emphasize several points. First, although I understand the frustration of State employees, who have in effect taken a 3% pay-cut in addition to years without cost-of-living adjustments, this case is not about the wisdom or fairness of the Legislature’s decision. Nor is it about the necessity of the Legislature’s action or whether the Legislature had reasonable alternatives to accomplish its goal.[7] Such considerations would become relevant to our analysis only if the Legislature’s decision constituted an impairment of contract. At that point, the inquiry would then become whether the impairment is unconstitutional, which is an analysis that focuses on the necessity of the legislative action. Because the majority correctly concludes that the changes at issue do not constitute an impairment of contract, however, those considerations do not factor into our analysis in this case. Simply put, it is not this Court’s role to question policy decisions made by the Legislature unless those decisions infringe on rights guaranteed by either the Florida or United States Constitutions.
Second, the result reached by the majority is dictated both by our precedent in Florida Sheriffs and by a careful reading of the preservation of rights statute. Although Florida Sheriffs does make reference to a “non-contributory” plan in the statements of its holding and does not address a change such as this one, its rationale clearly applies here. Prior to the enactment of the preservation of rights statute in 1974, the Legislature could make both retroactive and prospective changes to a mandatory retirement plan. See Fla. Sheriffs Ass’n v. Dep’t of Admin., Div. of Ret., 408 So.2d 1033, 1037 (Fla.1981) (“Under the prior case law, if the retirement system was mandatory as it is now, the legislature could at any time alter the benefits retroactively or prospectively for active employees.”). This Court in Florida Sheriffs concluded that this rule was “changed by the ‘preservation of rights’ section which ... vests all rights and benefits already earned under the present retirement plan so that the legislature may now only alter retirement benefits prospectively.” Id. The Court stressed that “the rights provision was not intended to bind *392 future legislatures from prospectively altering benefits which accrue for future state service.” Id. To hold otherwise would “impose on the state the permanent responsibility for maintaining a retirement plan which could never be amended or repealed irrespective of the fiscal condition of this state.” Id.
In interpreting the effect of the preservation of rights statute in Florida Sheriffs, this Court’s reasoning did not involve drawing the distinction advanced by the dissenting opinions with respect to the contributory or noncontributory nature of the plan. Nor did the Court’s analysis distinguish the types or nature of changes the Legislature could make prospectively. In fact, the Court referred to the ability to “repeal” the plan prospectively under the preservation of rights statute. Id. This Court’s decision in Florida Sheriffs is clearly binding here, and to hold that the Legislature’s changes constituted an impairment of contract rights would require us to recede from Florida Sheriffs.
Finally, even if this Court were to recede from Florida Sheriffs, the preservation of rights statute still compels the result reached by the majority. There is nothing in the statute that indicates a legislative intent to bind itself for all time to preclude future legislatures from ever altering the future benefits to be paid to employees as part of the state retirement system. As correctly held in Florida Sheriffs, this interpretation would be contrary to the Legislature’s intent as well as the logical meaning of the statute, which is to ensure that the Legislature cannot retroactively alter accrued benefits. This is a critical statutory guarantee that is far different from the conclusion that the Legislature intended to bind itself to never prospectively alter retirement benefits.
If this Court were to read the statute to preclude prospective changes such as the ones at issue here, then the Legislature would in effect be precluded from making any changes to the retirement plan without impairing contracts. Nothing in the statute contains the distinctions urged by the dissents between fundamental and non-fundamental changes or between changes that occur “within” the plan or that alter the “nature of the plan itself.” Dissenting op. at 895 (Lewis, J.) (emphasis omitted). Indeed, the Legislature has made numerous prospective changes to the retirement system over the years, including the reduction of the special risk credit at issue in Florida Sheriffs. In short, as recognized by Florida Sheriffs, the preservation of rights statute accomplished something very important and significant for State employees — it precluded the Legislature from making retroactive changes to a mandatory retirement system, which were previously allowed. Certainly such a change is not “wholly illusory” as Justice Lewis’s dissent contends. Dissenting op. at 394-95 (Lewis, J.).
Ultimately, I recognize the frustration of State employees who have in effect experienced a 3% reduction in their net pay as a result of the Legislature’s changes to the retirement plan. Indeed, these changes affect judges and all judicial branch employees as well. However, this case is not a referendum on the Legislature’s policy decision. It is not this Court’s role to express any position on that issue. Instead, as the majority has ably done, it is this Court’s task to carefully analyze and determine whether the Legislature has acted within its constitutional limits. Because Florida Sheriffs and the preservation of rights statute necessitate the conclusion that the Legislature is not constitutionally prohibited from making prospective changes to the mandatory state retirement plan, I believe it is *393 clear that the trial court’s judgment must be reversed.
CANADY and LABARGA, JJ., concur.

. As to the reasonable alternatives, although it does not affect our resolution of the issue in this case, I note that the appellees concede that the Legislature could have simply reduced the pay of State employees by 3% across the boárd without any constitutional prohibition. I point this out because I believe it highlights that the issue before this Court is not the propriety of the Legislature’s policy choice or an assessment of all the options available to the Legislature, but simply whether the Legislature’s decision passes constitutional muster.